4447 CORPORATION, et al., Appellants,

v.

Stephen GOLDSMITH, Appellee.

FORT WAYNE BOOKS, INC., et al., Appellants,

v.

STATE of Indiana and Stephen M. Sims, Appellees.

No. 29S04–8703–CV–270.

Supreme Court of Indiana.

March 2, 1987.

John H. Weston, David M. Brown, Brown, Weston & Sarno, Beverly Hills, Cal., Kenneth R. Scheibenberger, Lebamoff Law Offices, Fort Wayne, Steven M. Taylor, Taylor and Rubin, P.C., Southfield, Mich., Franklin I. Miroff, Ancel, Miroff & Frank, P.C., Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellees.

## CIVIL PETITION TO TRANSFER

GIVAN, Chief Justice.

These consolidated causes are before the Court on appellees' Petition to Transfer. Appellees filed similar actions in which they allege the various defendants, owners and operators of adult bookstores, have engaged in racketeering activity as defined in the Racketeer Influenced and Corrupt Organizations Act (RICO), Ind. Code § 35–45–6–1 *et seq.* Appellees seek various remedies as provided in the Civil Remedies for Racketeering Activity (CRRA) statute, Ind. Code § 34–4–30.5–1 *et seq.*

In both cases the trial court, pursuant to Ind. Code § 34–4–30.5–3(b), entered an *ex parte* order seizing appellants' assets. On interlocutory appeal of the denial of appellants' motions to vacate the seizure orders, a majority of the Court of Appeals, Fourth District, held that the RICO and CRRA statutes constitute facially unconstitutional prior restraints in their application to the predicate offense of obscenity. *4447 Corp. v. Goldsmith* (1985), Ind.App., 479 N.E.2d 578, 592. We grant appellees' petition and thereby vacate the opinion of the Court of Appeals.

In 1980, the legislature enacted the Indiana RICO statute, which is essentially patterned after the federal anti-racketeering laws. *See Alvers v. State* (1986), Ind. App., 489 N.E.2d 83. As set out in Ind. Code § 35–45–6–2(a), a person:

"(1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in real property or to establish or to operate an enterprise;

(2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of real property or an enterprise; or

(3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;"

commits the offense of Corrupt Business Influence, a Class C felony. " 'Racketeering activity' means to commit, to attempt to commit, or to conspire to commit a violation, or aiding and abetting in a violation" of any of a number of enumerated predicate offenses, including violation of the obscenity statute. Ind.Code § 35–45–6–1. A "pattern of racketeering activity" is defined as "engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission...." *Id.*

Under the CRRA provisions, the prosecuting attorney in a county in which the violation occurs may bring an action to enjoin a violation of the RICO statute. Ind.Code § 34–4–30.5–2. If the court finds by a preponderance of the evidence that such a violation has occurred, it may:

"(1) order a defendant to divest himself of any interest in any enterprise or real property;

(2) impose reasonable restrictions upon the future activities or investments of a defendant, including prohibiting a defendant from engaging in the same type of endeavor as the enterprise in which he was engaged in violation of IC 35–45–6–2;

(3) order the dissolution or reorganization of any enterprise;

(4) order the suspension or revocation of a license, permit, or prior approval granted to any enterprise by any agency of the state;

(5) order the forfeiture of the charter of a corporation organized under the laws of Indiana, or the revocation of a certificate authorizing a foreign corporation to conduct business within the state, upon finding that the board of directors or a managerial agent acting on behalf of the corporation, in conducting the affairs of the corporation, has authorized or engaged in conduct in violation of IC 35– 45–6–2 and that, for the prevention of future criminal activity, the public interest requires the charter of the corporation forfeited and the corporation dissolved or the certificate revoked; and

(6) make any other order or judgment that the court considers appropriate." *Id.*

Additionally, pursuant to Ind.Code § 34–4–30.5–3(a), the prosecuting attorney in a county in which any of the property is located "may bring an action for the forfeiture of any property used in the course of, intended for use in the course of, derived from, or realized through, conduct in violation of IC 35–45–6–2." Upon a showing by a preponderance of the evidence that the property in question was so used, the court shall order the property forfeited to the state. *Id.* When a forfeiture action has been filed, the prosecutor may move for an order to have the property subject to forfeiture seized by a law enforcement agency and the court "shall issue such an order upon a showing of probable cause to believe that a violation of IC 35–45–6–2 involving the property in question has occurred." Ind.Code § 34–4–30.5–3(b).

The first of the instant cases was commenced on August 1, 1983, when appellee Stephen Goldsmith, Prosecuting Attorney for the Nineteenth Judicial Circuit, filed a CRRA action in Marion Circuit Court. The complaint alleged that the three bookstores owned and operated by the individual and corporate defendants (appellants) comprised an illegal enterprise as defined in Ind.Code § 35–45–6–1 and that appellants had engaged in a pattern of racketeering activity. The predicate offenses alleged were the distribution of obscene matter in violation of Ind.Code § 35–30–10.1–2 (repealed by Acts 1983, P.L. 311, recodified as Ind.Code § 35–49–3–1).

At the same time Goldsmith filed a Verified Petition for Seizure of Property Subject to Forfeiture. In support of the petition, he attached a probable cause affidavit sworn by Detective Thomas R. Rogers of the Indianapolis Police Department. Detective Rogers stated therein that he and other officers had visited the two operating

bookstores alleged to be part of the illegal enterprise, where they observed sexually-oriented books, magazines, films and video-tapes available for sale or exhibition. The officers purchased four sexually explicit movies which were submitted to the court.

The officers were informed by one of the bookstore employees that a new bookstore, to be known as the Plaza Entertainment Center, was due to open at 4266 West 38th Street in Indianapolis on August 1, 1983. One of the officers visited that location and spoke to a construction worker, who informed the officer that sexually-oriented materials would be available for sale. In conclusion, Detective Rogers alleged that numerous investigations had led him to the reasonable belief that the two existing adult bookstores were part of a single enterprise and that the enterprise was preparing to open a new bookstore which would sell and exhibit obscene materials.

Based on those representations, the trial court on August 1 found probable cause to believe violations of the RICO statute existed and entered an *ex parte* order compelling the Indianapolis Police Department to seal the unopened bookstore. The court also ordered appellants to preserve certain business equipment located at the two operating bookstores and to list their other property. Trial was set for 72 hours later.

On August 4 appellants filed motions to dismiss the complaint and to vacate the seizure order, based in part on their contention that the order and the RICO statute abridged the exercise of the freedoms of speech and press in violation of the First and Fourteenth Amendments to the United States Constitution. The cause was continued on appellants' motions and later transferred to Hamilton Circuit Court, where on September 8 Goldsmith filed an amended complaint seeking a number of CRRA remedies.

On December 21, 1983, the trial court denied appellants' motions to dismiss the complaint and to vacate the August 1 seizure order. The court, pursuant to Ind.R. App.P. 4(B)(6), then certified for interlocutory appeal the question of whether a sei-zure order may issue when based on obscenity violations not yet litigated.

On March 19, 1984, appellee Stephen Sims, Prosecuting Attorney for the Thirty-Eighth Judicial District, filed a CRRA action in the Allen Circuit Court. The complaint alleged that the three adult bookstores owned and operated by the various defendants (appellants) comprised an illegal enterprise and that appellants had engaged in a pattern of racketeering activity, the predicate offenses being the distribution of obscene materials. Cited in the complaint were appellants' thirty-nine obscenity convictions entered between June of 1981 and March of 1984.

Sims simultaneously filed a Verified Petition for Seizure of Property Subject to Forfeiture. Attached to the petition was a probable cause affidavit sworn by Officer Charles Dennis of the Ft. Wayne Police Department. The affidavit alleged the thirty-nine prior obscenity convictions and related that police officers had observed materials believed to be obscene during recent surveillance of the bookstores. Also submitted to the court were taped descriptions by police officers of the contents of the materials.

That same day the court entered an *ex parte* order allowing the Ft. Wayne Police Department to seize the contents of the three bookstores. On March 23 appellants moved to vacate the order and in the alternative sought a modification of the order which would allow them to continue the sale and distribution of the materials in the bookstores. Those motions were premised on appellants' allegation that the order constituted a constitutionally impermissible prior restraint. The motions were denied on March 29.

After police officers on April 3 hauled away the contents of the bookstores, appellants filed an Emergency Motion for Inventory of Property Removed and/or Return of Property. That motion was also denied. On April 18 the trial court certified two questions for interlocutory appeal: 1) whether an application for seizure upon probable cause shown *ex parte* as provided by Ind.Code § 34–4–30.5–3(b) violates due

process guarantees provided by the Indiana and United States Constitutions; and 2) whether the seizure order, which is based upon prior criminal convictions, is a violation of the First Amendment.

Thus these cases are similar, with several important factual distinctions. In the Marion County case, the predicate obscenity violations were shown by the allegations of the investigating officers, while in the Ft. Wayne case the predicate violations underlying the RICO allegation were shown by proof of prior convictions for violations of the Indiana obscenity statute. The two existing Marion County bookstores were permitted to continue operating pending trial and the unopened store was sealed. The Court of Appeals issued a stay order allowing the store to open. The three bookstores in Ft. Wayne were sealed and the contents were hauled away by the police. Those stores remain closed.

Upon consolidating the two cases, the Court of Appeals determined that its disposition of the interlocutory appeals "require[d] resolution of but a single issue: whether the RICO and CRRA provisions invoked against the defendants abridge the freedoms of speech and press guaranteed by the First and Fourteenth Amendments to the United States Constitution." *4447 Corp., supra* at 583. The court concluded that:

> "[T]he challenged RICO/CRRA provisions are unconstitutional on three distinct yet interrelated grounds. First, they operate as a prior restraint which impermissibly impinges upon the dissemination of protected materials. Second, these measures fail to comply with the procedural safeguards required even for the suppression of *obscene* materials. Finally, independent of our determination that these statutes operate as an unconstitutional prior restraint, their provisions as they relate to obscenity must fall under the less restrictive means test announced in *United States v. O'Brien* (1968), 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672, for the evaluation of allegedly content-neutral state regulation which has an incidental impact upon free expression." *Id* at 585 (original emphasis).

■ Before addressing the questions certified for interlocutory appeal, we must analyze the issue found by the Court of Appeals to be dispositive, namely whether the RICO/CRRA statutory scheme as it pertains to the predicate offense of obscenity violates the First and Fourteenth Amendments to the United States Constitution. That analysis begins with the proposition that an act of the legislature must be afforded a presumption of constitutionality. *Ruge v. Kovach* (1984), Ind., 467 N.E.2d 673; *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585.

Appellees argue the purpose of the CRRA remedies is not to suppress speech but rather to compel the forfeiture of assets acquired through racketeering activity; therefore, their actions were not undertaken in an effort to enjoin or restrain any future display or distribution of presumptively protected expressive material. Appellees assert that since any personal property, regardless of its nature, which is derived from racketeering activity could possibly be seized, the seizure orders were not entered because appellants' assets were obscene materials but because there was probable cause to believe they were assets subject to forfeiture.

Appellants contend that the statutory scheme must be analyzed in terms of its effect upon the exercise of First Amendment rights, and in so doing the only conclusion that can be reached is that the statutes as applied to the predicate offense of obscenity constitute an impermissible prior restraint. Appellants would have us adopt the Court of Appeals' view "that for constitutional purposes, these proceedings must be viewed as the functional equivalent of a nuisance or obscenity action," *4447 Corp., supra* at 597, and cite a number of cases involving state actions found to constitute prior restraints. *See, e.g., Entertainment Concepts, Inc., III v. Maciejewski* (7th Cir.1980), 631 F.2d 497 (license revocation); *Universal Amusement Co., Inc. v. Vance* (5th Cir.1978), 587 F.2d 159 (nuisance abatement), *aff'd.* (1980), 445

U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413; *State ex rel. Blee v. Mohney Enterprises* (1972), 154 Ind.App. 244, 289 N.E.2d 519 (injunction).

To appellants, the word "racketeering" as applied in this context is merely a semantic device to allow the state to "expand its arsenal of weapons designed to suppress obscenity" to include license revocation, padlocking, forfeiture of property used to disseminate obscene matter and similar methods which the courts have historically condemned; consequently, the CRRA remedies constitute a restraint on future expression. We cannot agree.

The purpose of the federal RICO statute, after which the Indiana statute was patterned, is "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." *Russello v. United States* (1983), 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17, 26. Its provisions are to be liberally construed to effectuate its remedial purposes. *United States v. Turkette* (1981), 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246. One of the most important of those remedies is the forfeiture of assets acquired through racketeering activity. *Russello, supra.*

Both the federal and Indiana RICO statutes delineate predicate offenses which underlie an allegation of a pattern of racketeering activity. The Indiana RICO statute as originally enacted included obscenity violations as a predicate offense. While the federal RICO statute did not initially contain the predicate offense of obscenity violations, in 1984 Congress amended the statute to include as a predicate offense "any act ... involving ... dealing in obscene matter ... which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C.A. § 1961(1)(A) (West Supp.1986). The statute was further amended to include "any act which is indictable under ... title 18, United States Code ... sections 1461–1465 (relating to obscene matter)." 18 U.S.C.A. § 1961(1)(B) (West Supp.1986).

Given the clear legislative purpose in enacting these anti-racketeering statutes, that purpose, in the context of alleged obscenity violations, cannot be specifically construed to represent an attempt to restrain the sale or distribution of expressive materials. The legislative attack on racketeering activity is not, as appellants contend, merely a semantic device intended to circumvent well-established First Amendment doctrine.

Obscenity does not come within the area of constitutionally protected speech or press. *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419; *Roth v. United States* (1957), 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. Our legislature, as has Congress, has determined that obscenity violations should be one of the underlying offenses which may constitute racketeering activity as defined in the RICO statute. We must take heed of that legislative intent.

We believe the overall purpose of the RICO statute is as applicable to obscenity violations as it is to the other enumerated predicate offenses which have no conceivable First Amendment ramifications. Thus we cannot agree with either appellants or the Court of Appeals that the purpose of the Indiana RICO/CRRA scheme, as it pertains to the predicate offense of obscenity, is to restrain the sale or distribution of expressive materials. It is irrelevant whether assets acquired through racketeering activity are obscene or not. They are subject to forfeiture if the elements of a pattern of racketeering activity are shown. The other CRRA remedies, such as license revocation, are also available regardless of the nature of the racketeering enterprise.

There is a dearth of caselaw concerning RICO-based forfeiture of expressive materials. Appellees rely primarily on *Western Business Systems, Inc. v. Slaton* (N.D.Ga. 1980), 492 F.Supp. 513, a case in which the plaintiffs sought a preliminary injunction in an attempt to prohibit prospectively RICO prosecutions based on the predicate crime of obscenity. The plaintiffs asserted that "the statute constitutes a prior restraint on First Amendment freedoms by allowing certain presumptively protected materials to be forfeited to the state." *Id.* at 514.

The court denied the motion for a preliminary injunction. After reserving ruling on the defendants' contention that the plaintiffs were not proper parties to bring the suit, *Id.*, the court found that the plaintiffs had not shown any significant infringement of First Amendment rights, were not in substantial need of protection, had shown no threat of irreparable harm from enforcement of the statute and had "shown little likelihood of eventual success on the merits of their constitutional attack on the Georgia RICO Act." *Id.* at 515.

In its opinion the court focused primarily on the plaintiffs' argument that the statute allows for the forfeiture of printed matter on the basis that it is probably obscene. According to the court, their "attempted reading does great violence to the words of the statute." *Id.* at 514.

"As the court reads the statute, Ga. Code § 26–3403 prohibits the acquisition even of legitimate businesses with the proceeds of racketeering (as defined). Under § 26–3405 all property, of whatever nature and no matter how inoffensive, if it is acquired with racketeering proceeds, is subject to forfeiture to the state. These chattels might be anything from gardening equipment to cook books, and might also be sexually explicit materials. Forfeiture could apply to any chattel whatever, if it was acquired with the proceeds of racketeering. Thus, if the items seized are books or movie films, the seizure is totally unrelated to their contents. They would be forfeited under the statute not because of any likelihood of obscenity, but because they were personal property realized through or derived from crime.

"Similarly, the law enforcement officer authorized by § 26–3405(d)(2) to seize materials prior to the filing of a complaint, would be seizing them upon probable cause to believe that they were subject to forfeiture, and not—as plaintiffs argue—upon his personal judgment that the objects are obscene. We must keep in mind that these objects may be anything." *Id.*

We agree with court's reasoning that the purpose of the forfeiture provisions is totally unrelated to the nature of the assets in question. The overall purpose of the anti-racketeering laws is unequivocal, even where the predicate offense alleged is a violation of the obscenity statute. The remedy of forfeiture is intended not to restrain the future distribution of presumptively protected speech but rather to disgorge assets acquired through racketeering activity. Stated simply, it is irrelevant whether assets derived from an alleged violation of the RICO statute are or are not obscene.

Underlying the Court of Appeals' opinion was its fear that "these civil remedies invite indiscriminate prosecution." *4447 Corp., supra* at 592. Believing the "draconian" RICO/CRRA statutes to be "prone to abuse given the relative ease with which the state may invoke their sanctions," *Id.*, the court posited that "[t]he potency of the prosecutorial weapon and the threat it poses to the legitimate exercise of First Amendment freedoms obviously exceed the bounds of constitutionally permissible regulation." *Id.* at 601–02.

We do not share the Court of Appeals' fears that prosecutors will abuse the CRRA remedies and that allowing the seizure and/or forfeiture of assets such as those at issue here will lead to the breakdown of the protections the First Amendment undeniably affords to various forms of expression. It cannot be presumed that prosecutorial discretion will be abused to the extent of threatening "the continued existence of bookstores and theaters." *See Id.* at 601. The remedies provided in the CRRA are a legitimate tool in the attack on racketeering activity. To find otherwise would thwart the legislative intent apparent in the inclusion of obscenity as a predicate offense for a showing of a pattern of racketeering activity and would allow those engaged in racketeering activity to effectively shield their proceeds so gained behind a pseudo-constitutional barrier.

In sum, these actions seeking various CRRA remedies were instituted in an attempt to compel the forfeiture of the pro-

ceeds of alleged racketeering activity and not to restrain the future distribution of expressive materials. We hold that the RICO/CRRA statutes as they pertain to the predicate offense of obscenity do not violate the First and Fourteenth Amendments of the United States Constitution.

■ We now address the issues certified by the respective trial courts for interlocutory appeal. In the Marion County case, the issue is whether a seizure order could be based on alleged obscenity violations not yet litigated.

There are no reported Indiana cases directly confronting the question of whether prior convictions for the predicate offenses are necessary to sustain a conviction for Corrupt Business Influence under Ind.Code § 35–45–6–2. In *Alvers, supra* at 85, the Court of Appeals stated in its recitation of the facts that the defendant "was charged with seven specific acts of two basic types—receiving stolen property and substituting cubic zirconias for diamonds in jewelry that was submitted for repairs, thereby evidencing a pattern of racketeering activity." While it can be implied that there were no convictions for the acts underlying the allegation of racketeering activity, the issue of whether those acts could provide in part the basis for the conviction was not raised on appeal.

Under the federal RICO statute, convictions for the predicate offenses are not required. *Sedima, S.P.R.L. v. Imrex Co.* (1985), 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346; *United States v. Malatesta* (5th Cir.1978), 583 F.2d 748, *cert. denied* (1979), 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59. Nowhere in Ind.Code § 35–45–6–1, which defines "racketeering activity" and "pattern of racketeering activity," is there reference to the word conviction. *See Sedima, supra.* The statute speaks only of committing a "violation" of any of the enumerated predicate offenses.

Had the legislature intended to require convictions for the predicate offenses, it would have so worded the statute. Consequently, we hold that prior convictions for the underlying offenses are not required to prove a pattern of racketeering activity under Ind.Code § 35–45–6–2.

Appellants make light of the construction of the Indiana RICO statute advanced by the office of the Indiana Attorney General in *J.N.S., Inc. v. State of Indiana* (7th Cir.1983), 712 F.2d 303, in which the court affirmed the dismissal on standing grounds of the plaintiffs' complaint seeking a declaratory judgment regarding the constitutionality of the Indiana RICO statute as applied to obscenity. As stated by the court, "[w]hile our research discloses no Indiana cases construing the requirement of two 'violations,' at oral argument, a deputy attorney general opined that J.N.S. would have to accumulate two obscenity *convictions* before the state RICO statutes would apply." *Id.* at 306 (original emphasis). That opinion is not binding on this Court, and in any event there is no basis from which to conclude it is a proper construction of the Indiana RICO statute.

The Marion Circuit Court entered its *ex parte* seizure order upon a showing of probable cause to believe a violation of the RICO statute involving the property in question had occurred. As we construe the RICO statute, a showing of prior convictions for the alleged obscenity violations was not required. In order to prevail in the forfeiture action, appellee Goldsmith will of course have to show the existence of the obscenity violations in order to prove a violation of Ind.Code § 35–45–6–2 has occurred. It is at trial on the forfeiture and other requested CRRA remedies that the question of whether the materials are obscene will be litigated. A final determination of that question was not necessary at the hearing on the petition for seizure.

■ The trial court in the Ft. Wayne case certified two questions: 1) whether the application for seizure violates due process; and 2) whether the order constitutes a violation of the First Amendment. As to the latter question, we have above held that the RICO/CRRA statutory scheme as applied to the predicate offense of obscenity does not violate the First and Fourteenth Amendments. We accordingly find the seizure order does not constitute a pri-

or restraint or in any other manner impinge upon appellants' rights under those amendments.

Concerning the former question, which was not addressed by the Court of Appeals in the majority opinion, we interpret the trial court's inquiry to be whether, in light of procedural due process guarantees, the appellants can be deprived of their property, without an adversary hearing, pending trial on the forfeiture action. Ind.Code § 34–4–30.5–3(b) clearly allows, upon the filing of a forfeiture action under Ind.Code § 34–4–30.5–3(a), for the entry of an order seizing property allegedly subject to forfeiture upon a showing of probable cause to believe a violation of the RICO statute involving the property in question has occurred.

The Marion Circuit Court, although not required to do so by Ind.Code § 34–4–30.5–3, *sua sponte* set trial for 72 hours after the entry of its seizure order. The Allen Circuit Court did not set a trial date after entering the *ex parte* seizure order; nevertheless, we find that the setting of a trial date within such a brief period is not required to guarantee the due process rights of appellants.

At the point a seizure order is entered there has been a judicial determination that there is probable cause to believe a violation of Ind.Code § 35–45–6–2 involving the property has occurred. The reason for an adversary hearing on the seizure of the property would be to determine whether the property had been unlawfully seized. Generally, a defendant would initiate such action by the filing of a motion to vacate the seizure order, as was done in the instant cases, and we would expect the court to hold a prompt adversarial hearing on such a motion. If no motion to vacate is filed, or if the motion is denied, there will be a full adversarial hearing on the merits of the forfeiture action. Although Ind. Code § 34–4–30.5–3(a) does not specifically provide a time frame for that hearing, we would interpret the statute to require the hearing on the question of forfeiture to be held within a reasonable time.

Thus a defendant whose property has been seized pursuant to Ind.Code § 34–4–30.5–3(b) is afforded due process by a prompt adversarial hearing on a motion to vacate the seizure order and/or by a hearing on the question of forfeiture held within a reasonable time after the CRRA complaint and petition for seizure have been filed. In the instant case, appellants were afforded a hearing on their motions to dismiss the complaints and to vacate the seizure orders. Because the proceedings were halted by the filing of the interlocutory appeals, there has been no opportunity for trials on the merits of the CRRA complaints. At this stage we can discern no violation of appellants' due process rights.

Transfer is granted and the opinion of the Court of Appeals is vacated. The causes are remanded for further proceedings not inconsistent with this opinion.

PIVARNIK and DICKSON, JJ., concur.

SHEPARD, J., concurs in result with respect to *4447 Corporation v. Goldsmith* and dissents with respect to *Fort Wayne Books v. State.*

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

I am in agreement with the thoughtful and thorough opinion of Judge Young of the Fourth District. *4447 Corporation v. Goldsmith* (1985), Ind.App., 479 N.E.2d 578. I will surface portions of that opinion in order to re-emphasize the important points.

The majority summarizes with approval appellees' contention that ... "the purpose of the CRRA remedies is not to suppress speech but rather to compel the forfeiture of assets acquired through racketeering activity" and that ... "the seizure orders were not entered because appellants' assets were obscene materials but because there was probable cause to believe they were assets subject to forfeiture."

The majority intimates that the challenged legislative scheme here is a legitimate and rational response to the problem

of racketeering activity and that the potential impact of the forfeiture on presumptively constitutionally protected expressive materials is irrelevant. Therefore, the majority holds, under this relaxed standard of review, that the challenged legislative scheme passes constitutional muster.

The majority opinion misses the mark. Supreme Court decisions clearly direct, however, that in cases of this order, "the standard of review is determined by the *nature of the right assertedly threatened or violated* rather than by the power being exercised or the specific limitation imposed." *Schad v. Borough of Mount Ephraim* (1981), 452 U.S. 61, 68, 101 S.Ct. 2176, 2182, 68 L.Ed. 671. [Emphasis added].

*4447 Corporation v. Goldsmith, supra* at 583.

Here, the nature of the right assertedly threatened is appellants' First Amendment Right to sell books: books which until adjudged obscene, an unprotected category of speech, are constitutionally protected.

"Given the assertion of this right, we are not free to accept uncritically the state's characterization of the padlocking of bookstores and the seizure of their contents as neutral incidents of a campaign against "racketeering", *but rather must subject the state regulation to searching and realistic scrutiny.*" [Emphasis added]

*4447 Corporation v. Goldsmith, supra* at 584.

Under the circumstances of these cases, a searching and realistic scrutinization reveals that the challenged legislative scheme operates as an unconstitutional prior restraint of speech. As employed by both prosecutors, once a person is found to have engaged more than once in an open retail sale of unprotected speech, he forfeits his rights in protected speech. Such a perfunctory scheme resulting in an entire shutdown is clearly an unconstitutional prior restraint on future protected conduct.