4447 CORPORATION, et al., Appellants,

v.

Stephen GOLDSMITH, Appellee.

FORT WAYNE BOOKS, INC., et al., Appellants,

v.

STATE of Indiana and Stephen M. Sims, Appellee.

No. 29S04–8703–CV–270.

Supreme Court of Indiana.

June 18, 1987.

John H. Weston, David M. Brown, Brown, Weston & Sarno, Beverly Hills, Cal., Kenneth R. Scheibenberger, Lebamoff Law Offices, Fort Wayne, Steven M. Taylor, Taylor and Rubin, P.C., Southfield, Mich., Franklin I. Miroff, Ancel, Miroff & Frank, P.C., Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., William E. Daily, Deputy Atty. Gen., Indianapolis, for appellees.

ON PETITION FOR REHEARING

Rehearing denied.

SHEPARD, Chief Justice, concurring in part and dissenting in part.

I join in the Court's denial of rehearing in *4447 Corporation v. Goldsmith*, 504 N.E.2d 559, though I take a somewhat different view of the case. However, I would grant rehearing in *Fort Wayne Books v. State* and vacate the trial court's seizure order.

The two cases which have been consolidated for consideration of their common legal issues differ substantially in the degree to which the State has afforded the defendants opportunity for a hearing on the merits underlying the seizure of their property. The importance of such an opportunity has long been recognized by the Court as a part of due process:

> It is fundamental that no person can be deprived of any article which is recognizable by the law as property, without a judicial hearing, after due notice. No

degree of misconduct, or wrong, can justify the forfeiture of the property of a citizen, except in pursuance of some judicial procedure, of which the owner shall have notice, and in which he shall have the opportunity to contest the ground upon which the forfeiture is claimed. *State v. Robbins* (1890), 124 Ind., 308, 312, 24 N.E.2d 978, 979.

The properties in question in this case are bookstores which have not been subject to final forfeiture but have been ordered seized as property subject to possible forfeiture. Because the owners have been deprived of their "continued possession and use of the goods," such deprivation can only be imposed in a manner consistent with due process. *Fuentes v. Shevin*, 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 573 (1972).

Both seizure orders in these cases were issued after *ex parte* hearings without notice to appellants. In both cases, there was a judicial determination of probable cause that the defendants had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), Ind.Code § 35–4–6–1, and that the property was subject to forfeiture under the Civil Remedies for Racketeering Activity Act, Ind.Code § 34–4–30.5–1. The Marion County order set a trial on the merits just four days after the seizure. The two operating bookstores in Marion county were allowed to continue operating, but they were required to preserve certain business equipment and list other property. A third bookstore, as yet unopened, was sealed.

The Allen County order did not set a trial date and the parties appeared before the court only after appellant Fort Wayne Books filed a motion to vacate or modify the order. Three operating Allen County bookstores were sealed and their contents hauled away. Those stores remain closed for more than a year until the Court of Appeals granted a stay.

Issuance of a seizure order *ex parte* does not of itself violate due process. Extraordinary circumstances may justify seizure without notice or hearing. Such seizure is permissible if: 1) the seizure serves signifi-

cant governmental purposes, 2) notice and hearing might frustrate the purpose of the government purpose, for example, by allowing destruction or removal of the property to be seized, and 3) seizure is not initiated by self-interested third parties. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

The court may issue an *ex parte* order initially, but the order cannot be continued indefinitely. Some federal courts facing similar situations have required the government to establish by a preponderance of the evidence, at an adversarial hearing, that it is likely to prove at trial that the defendant is guilty of a violation of the statute and that the property is subject to forfeiture. *United States v. Spilotro*, 680 F.2d 612 (9th Cir.1982); *United States v. Long*, 654 F.2d 911 (3d Cir.1981); *United States v. Rogers*, 602 F.Supp. 1332 (D.Colo. 1985); *United States v. Veon*, 538 F.Supp. 237 (E.D.Cal.1982).

A somewhat different test was used by the district court in *United States v. Beckham*, 562 F.Supp. 488 (E.D.Mich.1983). That court required the government to prove by clear and convincing evidence that the property sought to be restrained was involved in a RICO violation, that the property was subject to forfeiture, and that the government had reasonable grounds to believe that the defendant was likely to make the property inaccessible. Both of these tests are consistent with standard due process analysis, balancing the individual's interest in avoiding limitations on liberty and the governmental interest in preserving assets which may be subject to forfeiture.

The fact that the property seized here is material that may be protected by the First Amendment should play an important part in determining what due process requires. Though this Court determined that seizure was not an unconstitutional prior restraint, the nature of the material seized is still important in a determination of due process. "[D]ue process calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S.

471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972).

Even an *ex parte* order seizing expressive materials may not violate the First Amendment. "This Court has never held, nor even implied, that there is an absolute First or Fourteenth Amendment right to a prior adversary hearing applicable to all cases where allegedly obscene material is seized." *Heller v. New York*, 413 U.S. 483, 448, 93 S.Ct. 2789, 2792, 37 L.Ed.2d 745, 751 (1973).

Stricter standards, however, have been applied to the seizure of communicative materials. "It is no answer to say that obscene books are contraband, and that consequently the standards governing searches and seizures of allegedly obscene books should not differ from those applied with respect to narcotics, gambling paraphernalia and other contraband." *A Quantity of Books v. Kansas*, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 1726, 12 L.Ed.2d 809, 813 (1964). "An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order." *Carroll v. Princess Anne*, 393 U.S. 175, 183, 89 S.Ct. 347, 353, 21 L.Ed.2d 325, 332–333 (1968).

The United States Supreme Court has enunciated procedural safeguards designed to obviate the dangers of seizing constitutionally protected matters. The burden in these procedures is on the government to show that the communication is unprotected. There must be a judicial determination in an adversary proceeding within a brief period following the seizure to assure the proper sensitivity to freedom of expression. The restraint in advance of the final determination on the merits must be limited to the preservation of the *status quo,* and there must be a prompt final judicial decision. *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

While these procedures were designed in cases which required a judicial determination of obscenity not required here, they are instructive as to the kinds of proce-

dures necessary to safeguard both individual rights to property and society's interest in preserving free expression. Reading these requirements and those standards governing seizure of non-expressive material, I am led to the following standards for seizure of expressive material where the government claims the right of seizure on grounds other than the content of the material.

A court may issue an *ex parte* seizure order initially following a judicial determination of probable cause. I would require that the seizure be followed shortly thereafter by an adversarial hearing at which the State bears the burden of proving that the property was used to commit or derived from a RICO violation. The court must then balance the interests of the individual property owner with the State's interest in preserving the property subject to forfeiture to determine if pre-forfeiture seizure is warranted. If such restraint is required, the court must also consider society's interest in protecting freedom of expression and limit the restraint to the protection of the *status quo*. In short, the order must be fashioned to use the least restrictive means, a traditional requirement for State action which indirectly affect expressive activity. *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Finally, the court must provide for a prompt final determination on the merits.

The statutes authorizing the seizure of property subject to forfeiture through a RICO violation do not provide procedures which comply with these due process requirements. Ind.Code § 34-4-30.5-3(b) allows for seizure upon a judicial determination that there is probable cause to believe that a RICO violation involving the property has occurred. Ind.Code § 34-4-30.5-4 requires the prosecuting attorney to bring an action for forfeiture "promptly" and provides that property be returned if an action is not instituted within 180 days of the seizure.

The Supreme Court, when faced with a federal statute that authorized seizure of obscene materials by customs officials but failed to prescribe time limits for institution and completion of forfeiture proceedings, chose to construe the statute to bring it within constitutional bounds. Relying on the legislative history of the statute, which reflected a clear intent that forfeiture actions be timely, the Court required that an action be brought within fourteen days of seizure and that a final determination be made within sixty days. *United States v. Thirty-seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

Clearly, Indiana's provision for release of property when an action is not brought within one hundred eighty days lies well outside these parameters. However, that general provision applies to seizures of both expressive and non-expressive materials. Delay in bringing forfeiture proceedings may not rise to the level of due process violation when the material seized is non-expressive. Whether delay in bringing a forfeiture action against non-expressive material is unreasonable should be determined by weighing the length of the delay, the reason for the delay, the defendant's assertion of his rights and any prejudice which he suffers thereby. *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983).

Thus, the one hundred eighty day time limit could satisfy the due process requirements for seizure of non-expressive property but be insufficient to provide due process for the seizure of expressive property. Even though we do not have available the extensive legislative history of the Indiana forfeiture statute [1], it could be construed to apply more stringent time limitations on the seizure of expressive materials, thus giving it a saving construction and allowing the application of that construction in this

---

**1.** The United States Supreme Court, in imposing a constitutionally valid time limit for bringing a forfeiture action against allegedly obscene materials seized by customs officials, relied on the record of debates in the Senate, early drafts of amendments to the statute, and changed circumstances since the statute was enacted in 1930, to determine that the legislature intended that the statute require a prompt determination following the seizure of expressive materials. *United States v. Thirty-seven Photographs*, 402 U.S. 363, at 370–372, 91 S.Ct. 1400, at 1405–1406.

case. Without such a construction, it is unconstitutional as applied to the seizure of expressive materials.

If the statute is given a saving construction, the Marion County order satisfies the requirements of due process. Upon issuing the order, the court set a trial date for a prompt adversarial hearing. The restraint was limited to maintaining the *status quo,* while preserving the property for possible forfeiture.

The Allen County order, however, does not comply with due process. The order was not limited to preserving the *status quo;* indeed, the entire contents of three bookstores were hauled away and kept under lock and key for an entire year. The court did not set an adversarial hearing. The fact that the court heard appellant's motion to vacate the order four days after the seizure is unavailing. A hearing had at the instigation of the defendant on his own motion necessarily places the burden of proof on the defendant. Due process requires a prompt adversarial hearing at which the State bears the burden. *See Carroll,* 393 U.S. 175, 89 S.Ct. 347.

Indiana's forfeiture statute should be construed to place stringent time limits on forfeiture of seizure of expressive materials, to require a prompt adversarial hearing and to limit restraint to maintaining the *status quo.* Because the Marion County proceedings complied with these requirements, its order should be affirmed. Because the Allen County proceedings did not provide for a prompt adversarial hearing and because the restraint went beyond that needed to preserve the *status quo,* that seizure order should be vacated.