Burke H. MENDENHALL and Plaza–Hill Realty Corporation, Plaintiffs–Appellants,

v.

Steven GOLDSMITH, et al., Defendants–Appellees.

No. 93–2715.

United States Court of Appeals, Seventh Circuit.

Submitted April 21, 1995.*

Decided July 7, 1995.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted on the briefs and record.

David J. Ryan, Steckler, Perry & Ryan, Indianapolis, IN (submitted), for Burke H. Mendenhall and Plaza–Hill Realty Corp.

Burke H. Mendenhall, Carmel, IN, pro se.

Steven E. Schrumpf, Office of Corp. Counsel City Counsel Legal Div., Diane Marger Moore, Office of Atty. Gen., Indianapolis, IN, for Steven Goldsmith.

Steven E. Schrumpf, Dale R. Simmons, Office of Corp. Counsel, City Counsel Legal Div., Linley E. Pearson, Atty. Gen., Indianapolis, IN, for City of Indianapolis, Indiana.

Dale R. Simmons, Office of Corp. Counsel, City Counsel Legal Div., Linley E. Pearson, Atty. Gen., Indianapolis, IN, for Marion County, Indiana.

Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.

FAIRCHILD, Circuit Judge.

■ Burke H. Mendenhall appeals from the dismissal of his civil rights action brought under 42 U.S.C. § 1983 against Steven Goldsmith, former Prosecuting Attorney for the Nineteenth Judicial Circuit of the State of Indiana; the City of Indianapolis, Indiana; and, Marion County, Indiana.[1] Count One of the complaint alleged that Mendenhall's constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments were violated when Goldsmith instituted seizure and civil forfeiture proceedings under Indiana law, resulting in the padlocking of Mendenhall's building that housed an adult bookstore. Count Two alleged a pendent claim of inverse condemnation against the City and County. The district court held that Goldsmith was immune from civil liability, and that no § 1983 cause of action was stated against the City or the County.[2] The pendent claim was dismissed without prejudice. We affirm.

## I. FACTUAL BACKGROUND

Burke H. Mendenhall owned a commercial building located at 4266[3] West 38th Street in Indianapolis, Indiana.[4] On June 1, 1983, a portion of the building was leased to Burton Gorelick, d/b/a Plaza Entertainment Center, for a five-year, renewable term. Gorelick obtained possession on June 11, and was set to open an adult bookstore on the premises when, on August 1, prosecutor Stephen Goldsmith filed in the Circuit Court of Marion County, Indiana, a civil complaint for injunctive relief against 4447 Corporation and other corporate and individual defendants, including Mendenhall.[5] The complaint in *Goldsmith v. 4447 Corporation, et al.,* alleged that the defendants had conducted an enterprise through a pattern of racketeering activity through the distribution of obscene books and films at three adult bookstores in violation of Indiana's Racketeer Influenced and Corrupt Organizations Act (RICO), Ind.Code §§ 35–45–6–1, *et seq.* The complaint was brought pursuant to Indiana's Civil Remedies for Racketeering Activity (CRRA) statute, Ind.Code §§ 34–4–30.5–1, *et seq.,* and sought forfeiture of all real and personal

1. Mendenhall appears *pro se,* and is not a lawyer. A corporation can appear only by counsel. *Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1427 (7th Cir.1985), *cert. denied,* 475 U.S. 1147, 106 S.Ct. 1801, 90 L.Ed.2d 346 (1986). Plaza Hill Realty Corporation has not appeared by counsel, and its appeal is dismissed.

2. The district court decided that Mendenhall had stated no § 1983 claim against the city or county, holding as a matter of law that an Indiana county prosecutor is a state officer and not a policy maker for the city or county. Mendenhall's brief does not attack that holding. Neither does he challenge the district court's holding that he stated no claim under § 1985. He has forfeited these points. *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990).

3. Numerous pleadings erroneously designated the number 4276 as the address of Mendenhall's building.

4. Title to the building was transferred from Mendenhall to Plaza–Hill Realty Corporation on March 15, 1984.

5. On September 8, 1983, venue in the case was transferred to the Circuit Court of Hamilton County, Indiana.

property "used in the course of, intended for use in the course of, derived from, or realized through" the defendants' racketeering activity. Ind.Code § 34–4–30.5–3(a). Goldsmith also filed a separate petition for seizure of the property subject to forfeiture. Ind.Code § 34–4–30.5–3(b). The seizure petition was supported by a probable cause affidavit executed by a detective of the Indianapolis Police Department describing the books and films available for sale at two of the bookstores that he believed to be obscene. The affidavit stated that another detective described a third bookstore yet to open on Mendenhall's property, and that this bookstore was also part of the defendants' racketeering activity. After hearing testimony in support of the petition, the trial judge entered an *ex parte* order finding that there was probable cause to believe that the two existing adult bookstores violated Indiana law, and directing the Indianapolis Police Department to "lock, seal and secure" the bookstore on Mendenhall's property in advance of its opening, as authorized by Indiana Code § 34–4–30.5–4.

On August 3, 1983, at Goldsmith's direction and pursuant to the seizure order, Indianapolis police officers locked Mendenhall's building and denied him access to it. The defendants next moved to dismiss the complaint and to vacate the seizure order on the ground that the RICO and CRRA statutes violated their First and Fourteenth Amendment rights. The trial court denied the motions but certified its ruling for an interlocutory appeal to the Indiana Court of Appeals. Mendenhall was not a party to the appeal in *4447 Corporation v. Goldsmith,* which was consolidated with that in *Fort Wayne Books, Inc. v. Indiana,* a case arising in the Circuit Court of Allen County, Indiana, and raising the same constitutional issue.

On June 12, 1985, the Indiana Court of Appeals ruled that the RICO/CRRA statutory scheme violated the First Amendment in that its injunctive remedies operated as a prior restraint in its application to the predicate offense of obscenity. *4447 Corp. v. Goldsmith,* 479 N.E.2d 578 (Ind.Ct.App. 1985). Mendenhall regained possession of his building.

On March 2, 1987, the Indiana Supreme Court granted a motion to transfer and vacate, upholding the constitutionality of the RICO and CRRA statutes and the pre-trial seizure of the bookstores' contents. *4447 Corp. v. Goldsmith,* 504 N.E.2d 559 (Ind. 1987). Following this ruling, on August 1, 1987, Goldsmith directed the police to again seize and padlock Mendenhall's building pursuant to the original seizure order. *Certiorari* was granted by the U.S. Supreme Court in *Fort Wayne Books, Inc. v. Indiana,* as well as *State v. Sappenfield,* 505 N.E.2d 504 (Ind. Ct.App.1987), with which it was consolidated. *Fort Wayne Books, Inc. v. Indiana,* 485 U.S. 933, 108 S.Ct. 1106, 99 L.Ed.2d 268 (1988). 4447 Corporation did not apply for *certiorari* and took no part in the Supreme Court proceedings. *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 52 n. 3, 109 S.Ct. 916, 921 n. 3, 103 L.Ed.2d 34 (1989).

On February 21, 1989, the U.S. Supreme Court decided that Indiana's RICO/CRRA statutory scheme was not unconstitutional for its use of obscenity as a predicate offense, but that the pre-trial seizure of expressive material contained in the bookstores was unconstitutional as a prior restraint on expression in violation of the First Amendment. *Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989).

In April, 1989, Mendenhall reached a settlement agreement in the state court litigation. The prosecution agreed to dismiss the CRRA action still pending against Mendenhall in exchange for his promise not to use his property for an "adult use." Control of the building was returned to Mendenhall.

The instant federal action, which was filed by Mendenhall in July, 1985, was stayed pending the outcome of the litigation in the Indiana courts and U.S. Supreme Court. Once the U.S. Supreme Court announced its decision, the stay was lifted, and subsequently the case was dismissed pursuant to Fed. R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. Appellate Jurisdiction

As an initial matter, we must inquire into our jurisdiction to consider this appeal. The

original judgment of the district court entered on March 5, 1993, stated that "the plaintiffs take nothing by their complaint." The judgment made no separate mention of Count Two, the pendent claim against the City and the County. Within ten days, on March 14, 1993, Mendenhall filed a motion under Fed.R.Civ.P. 59(e) seeking to amend the judgment by stating that the pendent claim was dismissed without prejudice. The district court entered an amended judgment on June 15, 1993, granting the motion and dismissing Count Two without prejudice. Mendenhall filed a notice of appeal on July 13, 1993, which was within thirty days of the amended judgment but not the original one.

■ Our rule is that any post-judgment substantive motion that is made within ten days of the judgment is deemed a Rule 59(e) motion. *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1065 (7th Cir.1992). The rule was designed to diminish disputes over appealability arising from the fact that a Rule 59(e) motion postponed the time for filing an appeal from the judgment sought to be altered or amended while a motion under Rule 60 did not. *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir.1993); see Fed.R.App.P. 4(a)(4) (1991) (amended 1993).[6] The district court's judgment in this case was clearly on the merits, and Mendenhall's motion may be properly considered as a Rule 59(e) motion, despite the appellees' characterization of the motion as one to correct a mere clerical error, because the motion sought a substantive change in the original judgment. *Maxus Energy Corp. and Subsidiaries v. United States*, 31 F.3d 1135, 1139–41 (Fed.Cir.1994); *Hertz Corp. v. Alamo Rent–A–Car, Inc.*, 16 F.3d 1126, 1131–32 (11th Cir.1994); see *Bank of California, N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1176–77 (7th Cir.1983). Having been served within ten days of the amended judgment, the motion postponed the appeals period. Because Mendenhall filed his appeal within thirty days of the amended judgment, we have jurisdiction to review the original judgment as well as the change.

**6.** A December 1, 1993, amendment to Rule 4(a)(4) provides that a Rule 60 motion served within ten days of the entry of a judgment postpones the time for filing a notice of appeal.

### B. Prosecutorial Immunity

■ Prosecutors may be entitled to either absolute or qualified immunity from civil liability under 42 U.S.C. § 1983 for actions undertaken pursuant to their official duties. Absolute immunity covers prosecutorial functions such as the initiation and the pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is "intimately associated" with the judicial process. *Buckley v. Fitzsimmons*, —— U.S. ——, —— – ——, 113 S.Ct. 2606, 2613–14, 125 L.Ed.2d 209 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 430, 431 n. 33, 96 S.Ct. 984, 996 n. 33, 47 L.Ed.2d 128 (1976). By contrast, a prosecutor has only the protection of qualified immunity when functioning in the role of an administrator or investigative officer rather than an advocate. *Buckley*, —— U.S. at ——, 113 S.Ct. at 2616. *Burns v. Reed*, 500 U.S. 478, 495, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991); *Imbler*, 424 U.S. at 431 n. 33, 96 S.Ct. at 996 n. 33. Giving legal advice to the police is deemed to be administrative in character. *Buckley*, —— U.S. at —— – ——, 113 S.Ct. at 2614–15; *Burns*, 500 U.S. at 495, 111 S.Ct. at 1944. A functional approach is used to determine the appropriate level of immunity. *Buckley*, —— U.S. at ——, 113 S.Ct. at 2613; *Burns*, 500 U.S. at 486, 111 S.Ct. at 1939.

■ In the case before us, the prosecutor had brought a civil proceeding. Appellant seems to argue that in suing civilly, a prosecutor is not protected at all by absolute immunity. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), however, the U.S. Supreme Court analogized government administrative proceedings to criminal prosecutions and held that a Department of Agriculture attorney who initiated and pursued an enforcement proceeding to revoke the registration of a commodity futures commission merchant performed functions analogous to those of a prosecutor, and therefore was entitled to absolute immunity in a damages action brought under *Bivens v.*

Fed.R.App.P. 4(a)(4)(F). Because we conclude that the appeal was timely under the 1991 version of Rule 4(a)(4), we need not decide whether the 1993 amendment would apply retroactively.

*Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[7] *Butz,* 438 U.S. at 512–17, 98 S.Ct. at 2913–16. The Court explained:

> We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought.... 
> The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. While there is not likely to be anyone willing and legally able to seek damages from the officials if they do not authorize the administrative proceeding, there is a serious danger that the decision to authorize proceedings will provoke a retaliatory response. An individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts. A corporation will muster all of its financial and legal resources in an effort to prevent administrative sanctions. "When millions may turn on regulatory decisions, there is a strong incentive to counter-attack."
> The defendant in an enforcement proceeding has ample opportunity to challenge the legality of the proceeding. An administrator's decision to proceed with a case is subject to scrutiny in the proceeding itself. The respondent may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified. His claims that the proceeding is unconstitutional may also

be heard by the courts. Indeed, respondent in this case was able to quash the administrative order entered against him by means of judicial review.

> We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Id.* at 515–16, 98 S.Ct. at 2915 (citations and footnote excluded).

Under the guidance of *Butz,* the Third Circuit, in *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991), rejected an argument similar to Mendenhall's and extended absolute immunity to the conduct of a prosecutor in a civil forfeiture action.[8] In *Schrob,* the plaintiffs filed a *Bivens* action in which they claimed that their company had been illegally seized after the prosecutor filed an *in rem* civil action seeking forfeiture of the company's stock and other property pursuant to the civil forfeiture provisions of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. §§ 881(a)(6), (7). The court noted that "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob,* 948 F.2d at 1411.

The court divided the instances of the allegedly improper prosecutorial conduct into four activities: "(1) [the] creation and filing of the *in rem* complaint; (2) preparation of and application for the seizure warrant; (3) participation in the *ex parte* hearing for the

---

7. For purposes of the immunity analysis, federal officials are indistinguishable from state officials and receive no greater degree of protection from constitutional claims. *Butz,* 438 U.S. at 500–01, 504, 98 S.Ct. at 2907–08, 2909; *Walrath v. United States,* 35 F.3d 277, 281 n. 1 (7th Cir.1994).

8. *See also, e.g., Murphy v. Morris,* 849 F.2d 1101 (8th Cir.1988) (civil rights); *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986) (civil contempt); *Barrett v. United States,* 798 F.2d 565 (2d Cir.1986) (negligence); *Russell v. Millsap,* 781 F.2d 381 (5th Cir.1985) (permanent injunction), *cert. denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986).

issuance of the seizure warrant; and (4) actions surrounding the seizure, retention and release of [plaintiffs'] property." *Id.* at 1409. It determined that absolute immunity shielded all acts save the retention and release of the subject property, which apparently included management functions, and were deemed to be administrative in nature. *Id.* at 1411, 1419. The court reasoned that these activities were sufficiently related to the judicial process to warrant the blanket protection afforded by absolute immunity. *Id.* at 1411–12, 1416–17. In addition, the plaintiffs had adequate means under the forfeiture laws to challenge improper conduct by the prosecutor. *Id.* at 1412–13. The court noted that in this context there should be no distinction between a prosecutor acting as the government's advocate in a criminal or civil proceeding. *Id.* at 1412.

■ Thus, that the alleged misconduct here arose in the context of a civil proceeding with a law enforcement purpose [9] does not render absolute immunity inappropriate. *Butz,* 438 U.S. at 515, 98 S.Ct. at 2915; *Schrob,* 948 F.2d at 1411–12; *Juide v. City of Ann Arbor,* 839 F.Supp. 497, 502 (E.D.Mich. 1993). The essential inquiry is whether Goldsmith was functioning in an enforcement role analogous to that of a prosecutor. *Buckley,* —— U.S. at ——, 113 S.Ct. at 2615; *Burns,* 500 U.S. at 490, 111 S.Ct. at 1941; *Butz,* 438 U.S. at 515, 98 S.Ct. at 2915; *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 996 n. 33. If so, he was entitled to absolute immunity.

■ With these principles in mind, we examine the allegations made against Goldsmith. Mendenhall maintained that Goldsmith violated his constitutional rights by: (1) bringing a civil RICO complaint against him and his corporation; (2) seeking a sei-

zure order from the Indiana trial court on August 1, 1983; (3) advising the police to execute the seizure order and close Mendenhall's building on August 3, 1983; (4) advising the police to reseal the building on August 1, 1987; and (5) delaying the return of the property in order to obtain his promise not to permit the property to be used for an "adult use."

We conclude that absolute immunity attached to Goldsmith's conduct in filing for an injunction, the forfeiture of Mendenhall's property, and the seizure of the property subject to forfeiture. Goldsmith acted pursuant to the authority vested in him under Indiana law, functioning purely in his capacity as an advocate for the state. *See Butz,* 438 U.S. at 515, 98 S.Ct. at 2915; *Imbler,* 424 U.S. at 427–29, 96 S.Ct. at 993–94; *Schrob,* 948 F.2d at 1412–13, 1416; *Juide,* 839 F.Supp. at 502–03.

■ We also think that Goldsmith was absolutely immune for his negotiation of a settlement with Mendenhall. Goldsmith's efforts in this regard were analogous to similar functions of a prosecutor. While not technically a plea bargain, which merits the protection of absolute immunity, *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir.1981); *see Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971) ("The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice."), the agreement struck by Goldsmith to dismiss the CRRA action still pending against Mendenhall in exchange for Mendenhall's promise not to use his property for an "adult use" was sufficiently similar to warrant the same level of immunity.[10] Ac-

---

9. Indiana's CRRA and RICO statutes were patterned after the federal anti-racketeering laws. *See Alvers v. State,* 489 N.E.2d 83, 87 (Ind.Ct. App.1986). The federal RICO statute was designed "to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots." *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983).

10. *See also, e.g., Arnold v. McClain,* 926 F.2d 963, 967 (10th Cir.1991) (prosecutor's action in

securing employee's resignation in exchange for promise not to file perjury charge was sufficiently similar to plea bargaining to warrant absolute immunity); *Schloss v. Bouse,* 876 F.2d 287, 291–92 (2d Cir.1989) (prosecutor's action in negotiating a release from civil liability in exchange for dropping criminal charges was entitled to absolute immunity); *Powers v. Coe,* 728 F.2d 97, 103–04 (2d Cir.1984) (prosecutor's action in allegedly breaching promise not to prosecute was covered by absolute immunity); *compare, e.g., Schrob,* 948 F.2d at 1419 (absolute immunity did not

cordingly, this allegation was also properly dismissed.

■ While it may be arguable that some of Goldsmith's actions in instructing the Indianapolis police to seize and padlock Mendenhall's building and in the course of retention of the seized property may have been administrative in nature, *see Buckley,* —— U.S. at ——, 113 S.Ct. at 2615; *Burns,* 500 U.S. at 492–95, 111 S.Ct. at 1942–44; *Schrob,* 948 F.2d at 1419,[11] so that absolute immunity would not apply, Goldsmith was at a minimum protected by qualified immunity.

■ Qualified immunity shields a local official from civil liability for damages insofar as his behavior does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A clearly established right is one which is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

At the time of the complained-of conduct, it had not been established that any aspect of Indiana's CRRA statute was unconstitutional. Lack of clarity on the point was evidenced by the conflicting decisions of the Indiana state court cited earlier and the dissenting opinions in those cases. The only constitutional right established in *Fort*

*Wayne Books* was a First Amendment right not to have expressive materials seized until there has been a determination of obscenity after an adversary hearing. *Fort Wayne Books, Inc.,* 489 U.S. at 62–63, 109 S.Ct. at 927. The opinion of the Court explicitly stated that it did not address the pre-trial seizure of non-expressive property, nor did it reach any due process question that might be involved. *Id.* at 63 n. 9, 67 n. 12, 109 S.Ct. at 928 n. 9, 930 n. 12. Thus, Goldsmith did not violate any clearly established constitutional right in advising the police to seize and padlock Mendenhall's building on two occasions. He did wait until two months after the decision in *Fort Wayne Books, Inc.* was announced to release the property. On this point, Judge Dillin noted that because there was no on-going business when the building was seized, the seizure only remotely affected the books and magazines within it and the building could arguably have been considered non-expressive property. He concluded that *Fort Wayne Books, Inc.* did not clearly establish a constitutional right to the return of the building. Again, Mendenhall has failed to challenge this ruling as erroneous.[12]

AFFIRMED.

---

apply to prosecutor's negotiation of a personal release of liability in connection with the seizure of property under 21 U.S.C. § 881(a)(6) where the seizure was unauthorized from the outset and the property should have been released immediately).

11. *See also, e.g., Giuffre v. Bissell,* 31 F.3d 1241, 1252–53 (3d Cir.1994) (prosecutor's action in an allegedly improper sale of forfeited property clearly involved administrative duties and therefore was not covered by absolute immunity); *Lavicky v. Burnett,* 758 F.2d 468, 476 (10th Cir. 1985) (prosecutor's action in managing the post-trial disposition of seized property that was not used as evidence and that the state did not intend to keep was not covered by absolute immunity), *cert. denied,* 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 917 (1986); *Lerwill v. Joslin,* 712 F.2d 435, 437 (10th Cir.1983) (prosecutor's action in assisting with the unlawful sale of seized proper-

ty not covered by absolute immunity); *Coleman v. Turpen,* 697 F.2d 1341, 1346 (10th Cir.1982) (prosecutor's participation in illegal sale of seized property was not entitled to absolute immunity); *compare, e.g., Thompson v. Walbran,* 990 F.2d 403, 404 (8th Cir.1993) (prosecutor's action in retaining defendant's property that would be needed at trial if the defendant succeeded in overturning his conviction was covered by absolute immunity).

12. *Soldal v. Cook County, Ill.,* —— U.S. ——, ——, 113 S.Ct. 538, 547, 121 L.Ed.2d 450 (1992), reaffirming "that seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place" was decided December 8, 1992. *United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 497, 126 L.Ed.2d 490 (1993), holding that "the Due Process Clause of the Fifth Amendment prohibits the

Government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportunity to be heard,'' was decided December 13, 1993. Both were decided after Goldsmith's pertinent conduct in this case.