Daniel K. GALBRAITH, and Richard L. Galbraith, Appellants–Plaintiffs,

v.

PLANNING DEPARTMENT OF the CITY OF ANDERSON, Appellee–Defendant.

No. 48A02–9210–CV–494.

Court of Appeals of Indiana, Second District.

Jan. 27, 1994.

Mark Dudley, William J. Norton, Anderson, for appellants-plaintiffs.

William C. Kreegar, Anderson, for appellee-defendant.

SHIELDS, Judge.

Daniel K. and Richard L. Galbraith (the Galbraiths) claim the trial court erred in granting judgment for the City of Anderson's Plan Commission (the Plan Commission)[1] in the Galbraiths' claim against the Plan Commission for taking their property without just compensation (inverse condemnation).

We affirm.

### ISSUE

Does the rezoning of the Galbraiths' property as a floodway constitute a taking?

1. An issue was raised in the trial court as to whether the Plan Commission is the real party in interest. However, because we affirm the trial

### FACTS

On June 6, 1983, the Galbraiths purchased approximately one acre of real estate on contract from William P. and Anna Sczesny. At the time of the purchase, the real estate was improved with a commercial building used for business purposes and had been zoned B–2, General Business District, by the Madison County Board of Commissioners. At the time they initiated this action, the Galbraiths were still using the real estate for commercial purposes.

The real estate was annexed by the City of Anderson effective December 10, 1989. When the Galbraiths were notified of the annexation ordinance, Mr. Galbraith "talked with the Director of the City Plan Commission and the Director advised [him] that the annexation ordinance *would not* affect the zoning of my real estate." Record at 59 (emphasis in original).

Because the U.S. Department of Housing and Urban Development had previously designated the real estate as a "floodway" in 1978, and because the City of Anderson and Madison County had adopted the National Flood Insurance Program, federal regulations required that the subject real estate be zoned as a floodway when rezoning occurred. After the subject property was annexed, the City of Anderson adopted a zoning ordinance which designated the subject real estate as a "floodway."

According to the zoning ordinance, the floodway district shall allow agricultural uses and nature preserves by right along with park and recreational uses provided they do not involve the erection of any structure or obstruction, the opening of any excavation or the deposition of any material or substance. All other uses, except residential structures, may be allowed after a permit from Natural Resources has been issued for the same. In addition, a special exception from the Board of Zoning Appeals will have to be granted after the

court's judgment on other grounds we do not reach this issue.

issuance of the permit from Natural Resources.

Record at 27.

Some time later, the Galbraiths' tenant requested a statement from the Plan Commission that the real estate was zoned to accommodate an auto sales business. The statement was required by the Indiana Bureau of Motor Vehicles to obtain a used car sales license. The Plan Commission refused to provide the statement.

■ An action against the Plan Commission was initiated by the Galbraiths on October 15, 1990. The Plan Commission filed a motion to dismiss. However, the Galbraiths submitted the affidavit of Richard Galbraith and evidence was heard at the hearing on the motion to dismiss. Further, the trial court in its judgment acknowledged that it considered matters outside the pleadings. Indiana Trial Rule 12(B) provides that

> [i]f, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Therefore, we treat the trial court's dismissal of the Galbraiths' amended complaint with prejudice as a summary judgment for the Plan Commission.

## DISCUSSION

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). The moving party bears the burden of establishing a prima facie case, based upon the designated material, that a genuine issue of material fact does not exist; any doubt must be resolved in favor of the

nonmoving party. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190. Once the moving party has sustained its burden of establishing this prima facie case, the nonmovant "may not rest upon the mere allegations or denials in his pleadings," but, based upon designated material, "must respond by setting forth specific facts showing that there is a genuine issue for trial." *Id.;* T.R. 56(E). On appeal from the grant of summary judgment, we apply the same standard as the trial court, *Babcock v. Lafayette Home Hosp.* (1992), Ind.App., 587 N.E.2d 1320, 1323, and affirm the grant of summary judgment if the record demonstrates that a genuine issue of material fact does not exist and that the moving party is entitled to judgment as a matter of law.

■ The Galbraiths argue that the trial court erred in entering judgment for the Plan Commission because the zoning of their property as a floodway constitutes a taking, in that the value of their real property has been diminished by the rezoning from $60,000 to $1,000. Thus, according to the Galbraiths, a taking has occurred in the form of a diminishment of the value of their property occasioned by the change in zoning which altered the "highest and best use" of their property.[2] *See Taylor–Chalmers, Inc. v. Board of Comm'rs of LaPorte County* (1985), Ind.App., 474 N.E.2d 531, 532–33.

■ Indiana courts have long held that a zoning ordinance which permanently prevents a landowner from utilizing his property in a manner to which it is reasonably adapted is unconstitutional as a confiscation of property without just compensation. *Metropolitan Dev. Comm'n of Marion County v. I. Ching* (1984), Ind.App., 460 N.E.2d 1236, 1237 (citations omitted). However, not every restriction placed upon private property constitutes a taking, and our supreme court has

2. "The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest." *Agins v. City of Tiburon* (1980), 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106. This determination involves a balancing of interests, and, in cases involving zoning ordinances, the competing interests are whether the regulation substantially advances legitimate state interests and whether it denies the property owner all economically viable use of his property. *Id.* at 261, 100 S.Ct. at 2141. This case, however, involves only the latter issue; that is, whether the rezoning denied the Galbraiths all viable economic use of their property.

drawn a distinction between "a parcel of property [that] is not zoned for its best and most profitable use and a situation where the present zoning restriction results in a deprivation of one's property rights." *Young v. City of Franklin* (1986), Ind., 494 N.E.2d 316, 317–18 (citation omitted). As Justice Holmes wrote, "property may be regulated to a certain extent[; however], if the regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon* (1922), 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322. In *Young*, our court noted that a property owner is not entitled to the highest and best use of his land; however, a taking occurs when all reasonable use of the property is prevented by the land use regulation. *Young*, 494 N.E.2d at 318 (citing *City of Anderson v. Associated Furniture & Appliances, Inc.* (1981), Ind., 423 N.E.2d 293, 296). Thus, a zoning regulation "goes too far," that is, is confiscatory, when it denies the property owner "all economically beneficial or productive use of land." *Lucas v. South Carolina Coastal Council* (1992), —— U.S. ——, ——, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (citations omitted).

■ Frequently, the question is limited to whether the zoning ordinance, as applied to a particular parcel of real estate by a decision of the Board of Zoning Appeals, has gone "too far." Here, however, because the provisions of the zoning ordinance require action by both the Department of Natural Resources (Natural Resources) and the Board of Zoning Appeals, the question is whether the zoning ordinance as implemented by either administrative agency has gone "too far," that is, has deprived the Galbraiths of all economically beneficial or productive use of their property.

The Plan Commission, however, argues that this issue is not before this court, and was not before the trial court, because the Galbraiths have not exhausted their administrative remedies.

■ In response, the Galbraiths argue that the exhaustion principle is not applicable to this case because their claim falls with the *Euclid* doctrine. In *Village of Euclid v. Ambler Realty Co.* (1926), 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 the United States

Supreme Court held that a plaintiff may seek judicial relief without exhausting administrative procedures if he attacks the constitutionality of the ordinance in its entirety. *Id.* at 386, 47 S.Ct. at 117. Although Indiana has never formally adopted the *Euclid* rule, our supreme court has distinguished claims that an entire zoning ordinance is unconstitutional from those where the ordinance is unconstitutional as applied to the petitioner's property. In *City of South Bend v. Marckle* (1939), 215 Ind. 74, 18 N.E.2d 764, the court opined that in the former circumstance the remedy is a direct action, while in the latter the petitioner is required to exhaust his administrative remedies before seeking judicial review "even though the illegality arises out of a violation of the petitioner's constitutional rights." *Id.* at 82, 18 N.E.2d at 767. *Marckle* was cited and harmonized with *Euclid* by our supreme court in *City of East Chicago v. Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N.E.2d 459. "The attack [in *Euclid*] was directed 'not against any specific provision or provisions, but against the ordinance as an entirety.' [In contrast] in the Markle [sic] case appellees sought, in an action for declaratory judgment, to have the ordinance declared unconstitutional only insofar as it restricted or related to the use of their real estate, and it was not claimed that the entire ordinance was invalid." *Id.* at 310, 111 N.E.2d at 465–66. Thus, Indiana law, like its federal counterpart, allows a plaintiff to bypass administrative procedures when the claim is that a statute is void in its entirety. *See also Indiana Toll Rd. Comm'n v. Jankovich* (1963), 244 Ind. 574, 582, 193 N.E.2d 237, 241.

■ Although the Galbraiths assert that the allegations in their amended complaint place them within the *Euclid* rule, the Galbraiths have been quite explicit in stating that they are attacking the zoning ordinance as it applies to their property and have not made any claim that the ordinance is void in its entirety. *See, e.g.*, Record at 17 (amended complaints seeks order "[d]eclaring Ordinance No. 29–90 to be unconstitutional, null and void as applied to plaintiffs' above de-

scribed property"). Therefore, *Euclid* is not applicable in this case.[3]

The fact is that an action for inverse condemnation is premature until such time as the landowner can establish that there are not available avenues by which the landowner can put his property to an economically beneficial or productive use. The zoning ordinance in question requires that the Galbraiths obtain both a permit from Natural Resources and a special exception from the Board of Zoning Appeals. This means that an essential element of Galbraiths' claim for inverse condemnation is their ability to show that Natural Resources has made a final determination regarding their application for a permit which deprives them of all reasonable use of their property, or, if the final determination of Natural Resources failed to have that effect, that a final determination which does have that effect has been made by the Board of Zoning Appeals.

"[A]mong the factors of particular significance [in determining whether a taking has occurred] . . . are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations." *Williamson County*, 473 U.S. at 190–91, 105 S.Ct. at 3118–19. It follows that this evaluation cannot occur until the appropriate administrative agency or agencies have "arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Id.* at 191, 105 S.Ct. at 3119. "The finality [or exhaustion] requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury." *Id.* at 193, 105 S.Ct. at 3120. Thus, a land-use challenge is not ripe for review by any court until there is a final decision by the involved agencies about the permitted uses. *Id.*

The Galbraiths' asserted that the value of their land was diminished by the rezoning of their property; however, they also admit that they have continued to use their property for commercial purposes and have not sought a permit from Natural Resources or a special exception from the Board of Zoning Appeals. This omission is critical; a court cannot evaluate the economic impact of the zoning ordinance and the extent to which the ordinance interferes with the Galbraiths' reasonable investment-backed expectations until there is a final determination regarding the possible uses of the subject property. Until this final determination is made, a cause of action for inverse condemnation will not lie.

The trial court properly entered judgment against the Galbraiths.

Judgment affirmed.

CHEZEM and SULLIVAN, JJ., concur.

---

**3.** According to Justice Blackmun, the parties are mistaken in their application of the exhaustion doctrine to this claim for inverse condemnation. In his opinion, the doctrine of finality more clearly articulates the considerations at issue. The distinction between exhaustion and finality was best delineated by Justice Blackmun, writing for the Supreme Court in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City* (1985), 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126:

The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable. . . . While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Id.* at 192–93, 105 S.Ct. at 3119–20 (citations omitted). Nevertheless, many reviewing courts articulate the principle of finality in terms of exhaustion of administrative remedies. "The exhaustion requirement exhibit[s] a judicial concern for the possible undesirable consequences of extending the remedy of inverse condemnation too far, and limit[s] the remedy to a class of cases where all attempts by the landowner to ameliorate the application of the ordinance to this property have failed." Sackman & Van Brunt, *Nichols' The Law of Eminent Domain* § 6.21[5] (93rd ed. 1993) (citations omitted). For purposes of this decision, whether the appropriate doctrine is that of finality or exhaustion is immaterial.