**TOWN COUNCIL OF NEW HARMONY, Indiana, Appellant–Defendant,**

v.

**Shirley PARKER, Appellee–Plaintiff.**

No. 87A01–9808–CV–305.

Court of Appeals of Indiana.

March 23, 1999.

Rehearing Denied May 18, 1999.

2.  See now Ind.Code § 34-6-2-136

3.  See now Ind.Code § 34-6-2-114

R. Thomas Bodkin, Shellie Deffendall Kyle, Bamberger, Foreman, Oswald and Hahn, Evansville, Indiana, attorneys for appellant.

Robert R. Faulkner, Fine & Hatfield, Evansville, Indiana, attorney for appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Defendant Town Council of New Harmony (Town) appeals the decision of the trial court to issue a declaratory judgment in favor of Shirley Parker's (Parker) complaint. The trial court held that the Town had an obligation to provide improvements such as streets, sidewalks, and public utilities to Parker's property and that the Town's restriction of access to Parker's property constituted a taking.

We affirm.

### ISSUES

Parker raises six issues for our review which we consolidate and restate as follows: [1]

1. Whether the Town's annexation of the present Parker property in 1882 or the subsequent annexation ordinance of 1975 created an obligation for the Town to provide municipal services to Parker's lots.

2. Whether the Town's restriction of access to Parker's property constituted a taking without just compensation.

3. Whether there was a taking when the zoning administrator of the Town issued a moratorium on improvement location permits for Parker's lots.

4. Whether the trial court erred in finding that the Town's plan to provide municipal services to Parker's property was inadequate.

### FACTS AND PROCEDURAL HISTORY

In 1871, a subdivision designated as Richard Owen's Addition to New Harmony was platted and recorded in the office of the Posey County Recorder's office. In 1874, a subdivision designated as Robert Dale Owen's Eastern Enlargement of New Harmony was platted and recorded in the office of the Posey County Recorder's office. On May 30, 1882, an ordinance was passed which, by its terms, annexed Richard Owen's Addition and Robert Dale Owen's Eastern Enlargement as a part of the Town of New Harmony. In 1982, Parker purchased Lots 10 and 11 through 17 and the east half of Lot 18 of Robert Dale Owen's Eastern Enlargement, and in 1990, Parker purchased Lots 1 through 8 of Richard Owen's Addition.

Subsequent to the annexation ordinance of 1882, the Town has not implemented a program to improve the platted streets abutting Parker's lots, but other lots within the two additions were provided streets, sewers, and other town services. In 1975, an annexation ordinance numbered 1975–5 was passed by the Town, annexing a certain area to the southeast portion of the Town. Subsequent to the passage of ordinance 1975–5, the Town installed storm sewers serving Parker's lots. The Town also applied for a federal grant to install streets to service Parker's lots, however, the grant was denied and the Town abandoned plans to provide the streets.

Since Parker purchased Lots 12 through 17 in Robert Dale Owen's Eastern Enlargement, the lots were assessed as being on a paved street with sidewalks which were improvements that had never been installed by the Town. As a result, Parker was charged higher property taxes. Further, since Parker purchased Lots 1 through 8 in Richard Owen's Addition, the lots were assessed on the basis of being on a paved street with water, sewer, and gas and electric utilities. None of those improvements, however, were provided even though Parker paid higher property taxes based on that assessment.

Parker made demands on the Town to provide the services to the lots for which she had been paying higher property taxes, but the Town refused to do so. The Town's Zoning Administrator declared a moratorium

---

[1]. The Town argues in its brief that Parker's claims are barred as a result of the doctrine of laches. However, the Town failed to bring this claim before the trial court and therefore the argument is waived.

on improvement location permits for Parker's lots and the Town also restricted access to Parker's lots by placing a chain across the unimproved portion of South Street.

On October 9, 1997, the trial court ordered that the Town was required to provide streets, sidewalks, and other utilities to Parker's lots in a comparable manner as those provided to other similarly situated properties within the Town. The court also ordered the Town to develop a program within sixty days to provide, within a reasonable time, the stated services to Parker's lots. Further, if the Town failed to do so, the court would order the matter to proceed under the eminent domain laws for the determination of damages resulting from the taking of Parker's property interests without just compensation. On November 7, 1997, the Town submitted its proposals for the provision of services. On August 11, 1998, the court made its October 9, 1997 entry final so as to allow the issue of liability in this cause to be appealed. On that same day, the court rejected the Town' proposals and appointed appraisers to assess damages to Parker's property pursuant to the Indiana eminent domain law. The Town now brings this appeal.

## DISCUSSION AND DECISION

### I. *Standard of Review*

■ Before addressing the merits of this appeal, we note our standard of review. At Parker's request, the trial court entered specific findings of fact and conclusions of law along with its judgment. When a party has requested specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52, our standard of review is two-tiered. First, we determine whether the evidence supports the findings, and second whether those findings support the judgment. *Culley v. McFadden Lake Corp.*, 674 N.E.2d 208, 211 (Ind.Ct.App.1996). The trial court's findings and conclusions will be set aside on appeal only if they are clearly erroneous. *Id.*

Findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them. *Id.* The judgment is clearly erroneous if it is unsupported by the findings of fact and the conclusions which rely on those findings. *Id.* To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *Gunderson v. Rondinelli*, 677 N.E.2d 601, 603 (Ind.Ct.App.1997). Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Yates–Cobb v. Hays*, 681 N.E.2d 729, 733 (Ind.Ct.App.1997).

### II. *Obligation to Provide Services*

■ The Town argues that neither the annexation of the present Parker property in 1882 nor the subsequent annexation ordinance of 1975 created an obligation for the Town to provide municipal services to Parker's lots. Specifically, the Town contends that Indiana law in 1882 did not mandate the provision of municipal services to annexed property, and the 1975 annexation ordinance did not include Parker's property because that property was already included within the Town.

The framework of Indiana's annexation law has long featured three basic stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period; (2) an opportunity for remonstrance by affected landowners; and (3) judicial review. However, earlier versions of the annexation statute did not require the city to set out in writing its plan for providing services; it was sufficient that the city present evidence at the trial court's hearing on remonstrance to show that the statutory preconditions to annexation (primary determinants) had been met. *City of Hobart v. Chidester*, 596 N.E.2d 1374, 1375 (Ind.1992). *See, e.g.*, Burns' Ind.Stat. Ann. § 48–702 (1963) [2]; Burns' Ind.Stat.Ann.

---

**2.** The primary determinants of the annexation's merits were:

(a) The annexation is in the *best interests of* the city and of the territory sought to be annexed.

§ 48–722 (Supp.1974), Ind.Code § 18–5–10–25.[3]

Municipal annexation is today governed by Indiana Code §§ 36–4–3–1—36–4–3–22, and § 36–3–4–13(d) states the specific requirements to be met for an annexation to be valid.[4] Although the annexation statute today requires the municipality to develop a written plan to provide services to the annexed territory, the annexation law in effect when the Parker property was annexed did not expressly require the municipality to provide services upon annexation. However, we find that by inference, the Town of New

> (b) The area is urban in character, being an economic and social part of the annexing city.
> (c) The terms and conditions set forth in the ordinance are fair and just.
> (d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.
> (e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.
> (f) The lines of the annexation are so drawn as to form a compact are abutting the municipality.
> Burns' Ind.Stat.Ann. § 48–702.

3. In pertinent part, the statute required evidence at the hearing to establish that:
> (c) The annexing city has developed a fiscal plan and has established a definite policy to furnish the territory to be annexed within a period of three [3] years, governmental and proprietary services substantially equivalent in standard and scope to the governmental and proprietary services furnished by the annexing city to other areas of the city....
> Burns' Ind.Stat.Ann. § 48–722.

4. The requirements for annexation today mandate the municipality to develop a written fiscal plan and establish a definite policy, by resolution of the legislative body, as of the date of passage of the annexation ordinance. The resolution must show:
> (1) The cost estimates of planned services to be furnished to the territory to be annexed.
> (2) The method or methods of financing the planned services.
> (3) The plan for the organization and extension of services.
> (4) That planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation, and that they will be provided in a manner

Harmony was required to provide services to the property that is now Parker's property.

The property that is now Parker's property was annexed to the Town and recorded on June 5, 1882. Therefore, the statutes under which the Town of New Harmony proceeded in 1882 to annex the territory that is now Parker's property were enacted on March 5, 1857. At that time, the procedure and plan for the enlargement of the boundaries of both cities and towns was not nearly as comprehensive as the annexation law of today.[5] The statute for annexation of territory provided that:

> equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density. However, in a county having a population of more than two hundred thousand (200,000) but less than three hundred thousand (300,000), the resolution of a city must show that these services will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries, regardless of similar topography, patterns of land use, or population density.
> (5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services are provided to areas within the corporate boundaries, that have similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria. However, in a county having a population of more than two hundred thousand (200,000) but less than three hundred thousand (300,000), the resolution of a city must show that these services will be provided to the annexed territory within four (4) years after the effective date of the annexation and in the same manner as those services are provided to areas within the corporate boundaries, regardless of similar topography, patterns of land use, or population density.
> (6) The plan for hiring the employees of other governmental entities whose jobs will be eliminated by the proposed annexation, although the municipality is not required to hire any employees.
> Ind.Code § 36–4–3–13(d).

5. Cities: Rev.Stat.1881, §§ 3195, 3196, 3197. Towns: Id. §§ 3388, 3389, 3390.

Whenever there shall be lots laid off and platted adjoining to or within such town, and a record of the same is made in the Recorder's office of the proper county, the Board of Trustees may, by resolution, extend the boundary of such town so as to include such lots, whether improved or not; and the lots thus annexed shall thereafter form a part of such town, and be within the jurisdiction of the same. A copy of such resolution, with plat or map of survey defining the metes and boundaries of such addition, shall be immediately filed and recorded in the office of the Recorder aforesaid, and said tier of out-lots and said lots annexed, as last specified, shall be included in and constitute a part of said corporation, and the inhabitants residing thereon, and owners thereof, shall be subject to all the laws and regulations, and entitled to all the privileges, of said corporation.

Towns: Rev.Stat. 1881 § 3388. There is no dispute that the Town properly followed the statutory requirements when it annexed the territory that is presently Parker's property. Instead, the Town contends that the annexation statute above did not require the Town of New Harmony to provide services to the annexed land. We find, however, that the above annexation statute does include that Parker is entitled to the same privileges as other members of the Town, and by inference this includes the provision of municipal services to Parker's lots. Furthermore, we find that annexation cases of the time period of this statute point to an implicit requirement for a municipality to provide municipal services to an annexed territory whenever the growth of the addition demands them.

For instance, in *Catterlin et al. v. The City of Frankfort*, the plaintiffs objected to an annexation petition, arguing that the reasons stated for annexation were insufficient. 87. Ind. 45 (1882). However, our supreme court found that "The [annexation] statute does not prescribe what reasons shall be set forth, and there sufficiency is necessarily left to the sound discretion of the authority passing upon the petition." *Id.* at 52. The reasons stated in the annexation petition included: (1) that the territory should be annexed to provide for the proper improvement of the

highways therein, (2) because the public convenience and health require that the territory should be under the jurisdiction of the city, the territory may be properly drained by substantial drainage and sewerage, and (3) the territory should be annexed to promote the growth and prosperity of the city. *Id.* In that case, the court found that the reasons contained in the petition for annexation were sufficient. *Id.* at 53.

Similarly, in *Stilz et al. v. The City of Indianapolis*, the remonstrants moved for an injunction against the City's desire to annex territory contiguous to the City of Indianapolis. 55 Ind. 515 (1877). The petition for annexation set forth:

that the vicinity adjacent to said territory is thickly populated, and is greatly in need of streets, sidewalks and alleys, which ought to be opened and constructed through and upon said territory; that the public convenience and health require that said lands should be under the jurisdiction of said city, in order that the same may be drained by sewers and ditches, and lighted with gas; that the vicinity in and around the territory being thickly populated, it is necessary that said city should have jurisdiction over the same, for the purpose of enforcing ordinances for the protection of the property and the persons of the citizens.

*Id.* at 518. In that case, the court found that all the statutory requirements for annexation were met by the city and that the petition was sufficient to annex the territory to the City of Indianapolis.

Finally, in an Indiana supreme court case, cited and analyzed by the Town, the court held that evidence that a town annexed a platted addition by ordinance was a sufficient showing of an acceptance of the dedication of streets therein for public use. *Walmer v. Town of Bremen*, 99 Ind.App. 186, 190, 191 N.E. 175 (1934). In that case, the court reasoned that:

The dedication of the street having been accepted by the Town of Bremen, it could proceed with the occupation and use thereof as public convenience required. Whenever a new town (or addition) is laid out, it

is not expected that all the streets and parks will be needed by the public at once. Acceptance by use and improvement whenever the growth of the town (or addition) demands it will be sufficient.

*Id.* Therefore, although the annexation statute in effect during the decision in these cases did not require the municipality to provide services to the annexed territory, we find these cases instructive in reaching our holding that an implied requirement to provide services arose to promote the growth, prosperity, and needs of the annexing city or town.

Similarly, in the case at hand, the Town annexed the territory that is today Parker's property in 1882, when the annexation statute did not specifically require the Town to provide services to the annexed territory. The statute, however, did require that the inhabitants residing on the annexed land were entitled to all the privileges of the Town, which implies that the Town of New Harmony was required to provide the same services to the annexed land as it had provided to the rest of the Town. Furthermore, the certified record of annexation does not state the reasons for annexation of the territory. (R. 202). Thus, unlike the cases cited above, we have no insight as to the reason the Town of New Harmony annexed this particular territory in 1882. However, the history of annexation law gives us insight as to the legislative intent of municipalities providing services to the annexed area. The present annexation statute provides a list of specific requirements for the provision of services that need to be met by the municipality while the annexation statute in 1882 simply required the municipality to record and define the boundaries of the annexed territory. It is apparent from the evolution of the annexation law that the legislature has intended the annexation of territory to become more restrictive in order to provide services to promote the growth and prosperity of the municipality. Populations have increased, land has become scarcer, and the reasons to annex land have changed since 1882. Thus, there may not have been a need to provide services to the annexed land in 1882. However, we find that the legislature intended that when the growth of the annexed land required them, the municipality was required to provide municipal services to the area that is presently Parker's property.

Although we find that there is an implied duty for the Town to provide services to Parker's property as a result of the 1882 annexation, we find that the 1975–5 annexation ordinance (R. 210) did not create a new requirement for the Town to provide services because Parker's property had already been annexed to the Town in 1882.

### III. *Taking by Restricting Access*

■ Next, the Town argues that its action of placing a chain across the unimproved portion of South Street was pursuant to its police power and did not constitute a taking without just compensation. Specifically, the Town contends that if Parker has any access to her property then the blocked access by way of South Street does not constitute a taking. We disagree.

■■ A taking by eminent domain or inverse condemnation includes any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property. *Board of Commissioners of Vanderburgh County v. Joeckel,* 407 N.E.2d 274, 278 (Ind.Ct.App.1980). Whether a particular interference is substantial is a question of fact for the fact-finder. *Indiana & Michigan Elec. Co. v. Stevenson,* 173 Ind.App. 329, 335, 363 N.E.2d 1254, 1259 (1977). Thus, a reasonable person could find that placing a chain across the street, which restricted access to Parker's property, in order to prevent citizens from driving on the unimproved street, substantially interfered with Parker's use of that property and constituted an unconstitutional taking of the property without just compensation under the eminent domain laws of the State of Indiana.

### IV. *Taking by Moratorium*

■ The Town argues that the act of the Zoning Administrator declaring a moratorium on issuing improvement location permits for the lots Parker owns did not constitute a taking. Specifically, the Town contends that the moratorium was proper because the Zon-

ing Administrator could not issue building permits because of a zoning ordinance requiring the availability of services to the lots.

However, as we have found, the Town was required to extend services to Parker's property pursuant to the annexation of the area. Furthermore, Indiana courts have long held that a zoning ordinance which permanently prevents a landowner from utilizing his property in a manner to which it is reasonably adapted is unconstitutional as a confiscation of property without just compensation. *Metropolitan Dev. Comm'n of Marion County v. I. Ching, Inc.*, 460 N.E.2d 1236, 1237 (Ind.Ct. App.1984). In the case at hand, the trial court's conclusion that the only reasonable use for Parker's lots was for residential purposes is supported by evidence in the record. When Parker purchased these lots, she planned to ultimately use them for residential purposes, as they were already subdivided into lots and zoned for residential purposes. (R. 407–408). However, because of the moratorium placed on granting improvement location permits for the lots, Parker was unable to utilize the property for which it was reasonably adapted.

### V. *Inadequate Plan*

■■■■ The Town contends that its plan to provide services to Parker's property submitted as required by the trial court's order was adequate. The trial court's order provided:

> The Court declar[es] that Defendant has an obligation to provide streets, sidewalks, and other utilities in a comparable manner as those provided to other similarly situated properties within New Harmony and mandating it to do so. The Court orders the Defendant to establish a program to provide, within a reasonable time, said services to the subject lots and to file that report with the Court within sixty days; and failure to do so, the Court will order this matter proceed under the eminent domain laws of the State of Indiana for the determination of damages resulting from the taking of Parker's property interests without just compensation. The Court further assesses costs against the Defendant Town Council of New Harmony.

(R. 120). Therefore, pursuant to the court's order, the Town had the option of either developing a program for providing municipal services to Parker's property, or in the alternative, to pay damages to Parker under the eminent domain laws of the State of Indiana resulting from the taking of Parker's property without just compensation. However, neither of the Town's proposals adequately met the trial court's order. Thus, the trial court properly appointed appraisers to determine the damages for the taking of Parker's property.

The Town's first proposal was to disannex Parker's property from the Town and reimburse her for all the property taxes she had paid since the purchase of the property that were for improved real estate. However, this proposal fails to provide services to Parker as the trial court order required. This proposal in effect removes Parker's property from the Town without providing her the actual damages she is due. Instead, the Town proposed to evade the court's order by reimbursing Parker for the taxes she paid for the nonexistent improvements rather than complying with the court order to provide Parker the services.

The Town's second proposal also attempts to evade the trial court order by agreeing to provide Parker the services, but assessing the costs for the improvements to be made by Parker. We find no error in the trial court finding that neither of the Town's proposals for provision of services pursuant to its order were adequate. The trial court properly ordered the appointment of appraisers to determine the damages as a result of the Town's taking of Parker's property.

### CONCLUSION

The Town's annexation of the present Parker property in 1882 created an obligation for the Town to provide municipal services to Parker's lots. The Town's restriction of access to Parker's property by placing a chain across the unimproved portion of South Street constituted a taking without just compensation. There was a taking when the zoning administrator of the Town issued a moratorium on improvement location permits for Parker's lots. The trial court properly found that the Town's plan to provide munici-

pal services to Parker's property was inadequate.

Affirmed.

STATON, J., and BROOK, J., concur.