Burke H. MENDENHALL, and Plaza–
Hill Realty Corporation, Appellants–
Plaintiffs,

v.

CITY OF INDIANAPOLIS, Indiana
and Marion County, Indiana,
Appellees–Defendants.

No. 49A04–9901–CV–1.

Court of Appeals of Indiana.

Oct. 12, 1999.

John D. Raikos, Indianapolis, Indiana, Attorney for Appellant.

Dale R. Simmons, Office of Corporation Counsel, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Appellants–Plaintiffs, Burke Mendenhall and Plaza–Hill Realty Corporation ("Plaza–Hill"), appeal from the trial court's entry of summary judgment in favor of Appellees–Defendants, City of Indianapolis, Indiana (the "City") and Marion County, Indiana (the "County"), and from denial of Mendenhall's motion for summary judg-

ment on Mendenhall's complaint for damages for inverse condemnation. We affirm, holding that the undisputed material facts show that the actions of which Mendenhall complains were undertaken by an agent and on behalf of the State of Indiana, and thus, the City and the County are entitled to judgment as a matter of law.

### Issues

Mendenhall raises the following restated issues for our review:

1. Whether the trial court properly granted summary judgment to the City/County on finding that:

    a. The issue of Goldsmith's status as an agent of the State and not of the City/County in prosecuting the civil forfeiture action had been established in a former adjudication and Mendenhall was precluded from relitigating it herein;

    b. The City/County is entitled to immunity for the actions of the County Prosecutor and the City Police Department in prosecuting a civil forfeiture action; and

    c. An inverse condemnation claim is not the appropriate form of action for redress of the seizure of real property pursuant to a civil forfeiture action.

2. Whether the trial court erred in denying Mendenhall's motion for summary judgment based on these same conclusions of law.

### Facts and Procedural History[1]

This case comes to us via a lengthy and circuitous route through the state and federal courts. As briefly as possible in order to understand the issues before us, the facts are as follows: Mendenhall owns a building at 4266 West 38th Street in Indianapolis, Indiana. On June 1, 1983, Mendenhall leased a portion of this building to Burton Gorelick, doing business as Plaza Entertainment Center, for a five-year, re-

1. Oral argument was heard in this case on       September 14, 1999, in Indianapolis, Indiana.

newable term. Gorelick took possession on June 11, 1983, and prepared to open an adult bookstore at the location. Gorelick operated adult bookstores at two other locations in the City.

On August 1, 1983, Marion County Prosecutor Stephen Goldsmith filed a civil complaint for injunctive relief against several individual and corporate defendants, including Gorelick, Plaza Entertainment Center, and Mendenhall. The complaint alleged that the defendants had conducted an enterprise through a pattern of racketeering activity through the distribution of obscene books and films at three adult bookstores in violation of Indiana's Racketeer Influenced and Corrupt Organizations (RICO) Act. Ind.Code §§ 35–45–6–1 to – 2. The complaint was brought pursuant to Indiana's Civil Remedies for Racketeering Activity (CRRA) Act. Ind.Code §§ 34–4–30.5–1 to –7 (now codified at Ind.Code §§ 34–24–2–1 to –8). The complaint sought forfeiture of all real and personal property "used in the course of, intended for use in the course of, derived from, or realized through" the defendants' racketeering activity. *See* Ind.Code § 34–24–2–2(a). Goldsmith sought seizure of the property subject to forfeiture through a separate petition. *See* Ind.Code § 34–24–2–2(b). The seizure petition was accompanied by a probable cause affidavit executed by a detective of the Indianapolis Police Department (IPD) describing the books and films for sale at two of the bookstores that he believed to be obscene. The affidavit included a description by another detective of the bookstore yet to open on Mendenhall's property. After hearing testimony in support of the petition, the trial judge entered an *ex parte* order finding that there was probable cause to believe that the two existing bookstores had violated Indiana law, and directing IPD to "lock, seal and secure" the bookstore on Mendenhall's property in advance of its

opening pursuant to Indiana Code section 34–4–30.5–4 (now Indiana Code section 34–24–2–4). R. 274. On August 3, 1983, IPD officers padlocked Mendenhall's building and denied both him and Gorelick access to the building and its contents.

The defendants moved to dismiss the complaint and to vacate the seizure order on the ground that Indiana's RICO and CRRA statutes violated their First and Fourteenth Amendment rights. The trial court denied the motion, but certified its ruling for interlocutory appeal to the Indiana Court of Appeals. The case, *4447 Corp. v. Goldsmith*, was consolidated on appeal with *Fort Wayne Books, Inc. v. Indiana*, a case arising out of Allen County, Indiana and raising the same constitutional issues. Mendenhall was not a party to the appeal.

On February 2, 1984, the Court of Appeals issued an order modifying the trial court's seizure order pending appeal and ordering that IPD "unlock, unseal and release" Mendenhall's property, and further ordering the defendants to "preserve all property" at that location. R. 275–76. Mendenhall regained possession of his building, and on March 15, 1984, transferred title to the property to Plaza–Hill, an Indiana corporation of which he is the president and sole shareholder.[2]

On June 12, 1985, the Court of Appeals issued its opinion holding that Indiana's RICO/CRRA statutory scheme violated the First Amendment in that its injunctive remedies operated as a prior restraint in its application to the predicate offense of obscenity. *4447 Corp. v. Goldsmith*, 479 N.E.2d 578, 585 (Ind.Ct.App.1985). Thereafter, Mendenhall filed a complaint in federal court alleging violation of his civil rights and damages from inverse condemnation. However, his federal action was stayed pending final resolution of the appeal in state court.

---

**2.** For this reason, we will hereafter refer to both Mendenhall and Plaza–Hill as "Mendenhall" unless the context requires otherwise.

On March 2, 1987, the Indiana Supreme Court granted transfer, vacated the Court of Appeals opinion, and held that the inclusion of obscenity as a predicate offense did not render Indiana's RICO and CRRA statutes unconstitutional. *4447 Corp. v. Goldsmith*, 504 N.E.2d 559, 566 (Ind.1987). The supreme court further upheld the pre-trial seizure of the bookstores' contents. *Id.* at 567.

While the appeals of this matter were pending, Gorelick defaulted on his lease agreement with Mendenhall, and Mendenhall relet the premises to Video & Gift Center, Inc. Video & Gift Center took possession of the premises on August 1, 1987, and prepared to open an adult bookstore at the location. However, on that same day and at the direction of Goldsmith, IPD reseized and repadlocked the property pursuant to the original seizure order.

Following the Indiana Supreme Court's ruling, certiorari was granted by the United States Supreme Court in *Fort Wayne Books, Inc. v. Indiana*, 485 U.S. 933, 108 S.Ct. 1106, 99 L.Ed.2d 268 (1988). 4447 Corporation did not seek certiorari, and took no part in the proceedings before the Supreme Court. *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 52 n. 3, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989). On February 21, 1989, the Supreme Court held that Indiana's RICO/CRRA statutory scheme was not unconstitutional for its use of obscenity as a predicate offense, but that the pre-trial seizure of the bookstores' contents was unconstitutional as a prior restraint on expression in violation of the First Amendment. *Id.* at 58, 66–67, 109 S.Ct. 916.

In April 1989, Mendenhall reached a settlement in the state court litigation. Goldsmith, by his deputy prosecuting attorney Philip Blowers, offered to dismiss the RICO/CRRA action still pending against Mendenhall in exchange for his

promise not to use his property for an "adult use." R. 196–97. Mendenhall signed a letter agreeing to these terms, r. 207–08, and his property was once again released to him. Mendenhall was then dismissed with prejudice from the RICO action. R. 209.

The stay in the federal court proceedings was subsequently lifted. Upon motion by Goldsmith and the City of Indianapolis, the District Court dismissed Mendenhall's complaint for federal civil rights violations, and elected not to continue to exercise pendent jurisdiction over the state inverse condemnation cause of action. R. 132–43, 277. The District Court's decision was affirmed by the Seventh Circuit Court of Appeals. *Mendenhall v. Goldsmith*, 59 F.3d 685, 692 (7th Cir.1995), *cert. denied*, 516 U.S. 1011, 116 S.Ct. 568, 133 L.Ed.2d 492 (1995).[3]

Thus, we come to the proceedings before us. On December 22, 1995, Mendenhall filed the instant complaint for damages from inverse condemnation in Marion County Superior Court against the City and the County. The City and the County were jointly represented. All parties moved for summary judgment. Following a hearing, the trial court entered findings and conclusions granting the City/County's motion for summary judgment, denying Mendenhall's motion for summary judgment, and entering judgment in favor of the City/County and against Mendenhall. Mendenhall filed a motion to correct error, which was denied. This appeal followed.

*Discussion and Decision*

### I. Standard of Review

■ This case comes to us on both a grant and denial of summary judgment. Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no

---

**3.** Mendenhall purported to pursue the appeal on behalf of himself and Plaza–Hill *pro se*. Because Plaza–Hill did not appear by counsel,

its appeal was dismissed. *Mendenhall*, 59 F.3d at 687 n. 1.

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1150 (Ind.Ct.App. 1997). If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1200 (Ind.Ct.App.1998), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *General Accident Ins. Co. of America v. Hughes*, 706 N.E.2d 208, 210 (Ind.Ct.App.1999), *trans. denied.*

■ On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Pflanz*, 678 N.E.2d at 1151. We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino*, 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Jones v. Western Reserve*

*Group*, 699 N.E.2d 711, 714 (Ind.Ct.App. 1998), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Sims v. Barnes*, 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.* Further, the fact that both parties requested summary judgment does not alter our standard of review. *Von Haden v. Supervised Estate of Von Haden*, 699 N.E.2d 301, 303 (Ind. Ct.App.1998). We separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*

## II. Grant of City/County's Motion for Summary Judgment

The material facts of this case as recited herein are undisputed by the parties. However, Mendenhall contends that the trial court incorrectly applied the law to these facts and erred in granting the City/County's motion for summary judgment. Mendenhall disputes the trial court's conclusions of law that: 1) the doctrine of issue preclusion establishes for purposes of this lawsuit Goldsmith's status as an agent of the State; 2) the City/County is shielded by prosecutorial and judicial immunity for the actions of Goldsmith and IPD in prosecuting the civil forfeiture action; and 3) an inverse condemnation action is an inappropriate cause of action for redress of Mendenhall's claim for damages from the civil forfeiture action. We will address each of Mendenhall's contentions in turn.

### A. Preclusion

The trial court found that "the fact that [ ] Goldsmith was acting as an agent for the State of Indiana was established in [Mendenhall's] prior case against Goldsmith as established in the rulings of the U.S. District Court for [the] Southern District of Indiana and the U.S. Seventh Circuit Court of Appeals.... Therefore, [Mendenhall is] precluded by the doctrine of issue preclusion from re-litigating the

issue." R. 34. Because previous litigation had established that Goldsmith was acting as an agent of the State, the trial court found that Mendenhall "may not maintain an action for inverse condemnation against the [ City/County]...." R. 33. Mendenhall contends that the trial court erred in finding as a matter of law that issue preclusion establishes for the purposes of this lawsuit that Goldsmith acted as an agent of the State of Indiana and that the City/County is not liable for his actions in prosecuting the civil forfeiture action.

■■■ Issue preclusion (sometimes referred to as collateral estoppel) bars the subsequent litigation of a fact or issue which was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 968 (Ind.1998). In that situation, the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims. *Sullivan v. American Casualty Co. of Reading, Pa.*, 605 N.E.2d 134, 137 (Ind.1992). However, the former adjudication will only be conclusive as to those issues which were actually litigated and determined therein. *Wedel v. American Elec. Power Serv. Corp.*, 681 N.E.2d 1122, 1131 (Ind.Ct.App.1997), *trans. denied*. Issue preclusion does not extend to matters which were not expressly adjudicated and can be inferred only by argument. *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 461 (Ind.Ct. App.1980). The primary consideration in the use of issue preclusion is whether the party against whom the former adjudication is asserted had "a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances" to permit the use of issue preclusion in the subsequent action. *Sullivan*, 605 N.E.2d at 138. Review of a trial court's decision regarding the use of issue preclusion is subject to an abuse of discre-

tion standard. *Shell Oil*, 705 N.E.2d at 969.

■■■ In this case, the former adjudication to which we refer is the federal case in which Mendenhall asserted section 1983 claims against Goldsmith, the City and the County. In that former adjudication, the District Court found, based upon article 7, section 16 of the Indiana Constitution which establishes the office of prosecutor, that Goldsmith "is not a city or county officer, but is rather a state officer." R. 142–43. Thus, the District Court found that neither the City nor the County could be held liable in a section 1983 action for Goldsmith's actions in prosecuting the civil forfeiture action on behalf of the State.[4] R. 143. *See Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir.1995) ("Goldsmith acted pursuant to the authority vested in him under Indiana law, functioning purely in his capacity *as an advocate for the state*.") (emphasis added). In this subsequent action, Mendenhall seeks to hold the City/County liable for damages he incurred as a result of the alleged inverse condemnation of his property via the civil forfeiture action instituted and prosecuted by Goldsmith.

■■■ Mendenhall claims that issue preclusion does not apply in this inverse condemnation case because his inverse condemnation claim was dismissed without prejudice by the district court and thus was not adjudicated on the merits. In this regard, Mendenhall is apparently confusing *issue* preclusion with *claim* preclusion. Claim preclusion applies where a final judgment on the merits has been rendered in an action and acts as a complete bar to a subsequent action between the same parties or their privies which raises any matter which was or might have been litigated in the previous action. *Wedel*, 681 N.E.2d at 1131. This is clearly not applicable to the case before us. The state inverse condemnation claim was raised in but specifically not decided by the district court,

---

4. The district court also found that Goldsmith was shielded by absolute prosecutorial immu-
nity from any personal liability for the civil forfeiture action. R. 140.

which chose to dismiss the pendent state claim without prejudice when it dismissed the federal claims. Thus, claim preclusion does not completely bar Mendenhall's inverse condemnation claim.

However, the federal court clearly and necessarily determined in resolving Mendenhall's civil rights claim that Goldsmith was acting as an agent of the State. This determination bars relitigation of the same issue in any subsequent action on any claim in which the issue arises. Thus, although the inverse condemnation *claim* is not barred, the doctrine of issue preclusion bars relitigation of the *issue* of Goldsmith's capacity as part of the inverse condemnation claim. As it has been conclusively determined in the former adjudication that Goldsmith was acting as an agent of the State, and not of the City or the County, in instituting and prosecuting the civil forfeiture action, the City/County cannot be held liable for his actions.

### B. *Immunity* [5]

#### 1. *Prosecutorial Immunity*

■ Mendenhall claims that the City/County is not entitled to the benefit of Goldsmith's prosecutorial immunity. However, having determined for purposes of this and all subsequent actions in which this issue would arise that Goldsmith was acting as an agent of the State in instituting and prosecuting the civil forfeiture action and that the City/County is thus not liable for his actions, we need not determine whether the City/County is also shielded from liability by virtue of prosecutorial immunity.

#### 2. *Judicial Immunity*

The trial court also found that "[t]o the extent [Mendenhall's] claim is based upon the actions of the [IPD] in executing the pre-trial seizure order, [the City/County is] entitled to judicial immunity." R. 34. Mendenhall claims that the trial court erred in ruling as a matter of law that the City/County is entitled to the benefit of judicial immunity.

■ It is well-settled that judges are entitled to absolute judicial immunity for all actions taken in the judge's judicial capacity, unless those actions are undertaken in the complete absence of jurisdiction. *Newman v. Deiter*, 702 N.E.2d 1093, 1097 (Ind.Ct.App.1998), *trans. denied.* The policy underlying this grant of immunity is the preservation of judicial independence in the decision-making process. *Id.* Those same policies underlie the grant of absolute judicial immunity to non-judicial officers who perform quasi-judicial functions. *J.A.W. v. State*, 650 N.E.2d 1142, 1151 (Ind.Ct.App.1995), *aff'd on trans.*, 687 N.E.2d 1202, 1203 n. 3 (Ind.1997). Absolute judicial immunity therefore extends to persons performing tasks so integral or intertwined with the judicial process that they are considered an arm of the judicial officer who is immune. *Id.* at 1151–52. In determining whether a person is entitled to the benefit of judicial immunity, we use the functional approach established by the United States Supreme Court and look to the nature of the function performed, not the identity of the person who performed it. *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *J.A.W.*, 650 N.E.2d at 1152. The act of executing or enforcing a court order is a function integral to judicial proceedings. *Newman*, 702 N.E.2d at 1100. Thus, a non-judicial officer who acts in furtherance

---

5. The prosecutorial and judicial immunities discussed herein are common law immunities separate and distinct from the immunity granted for tortious acts by the Indiana Tort Claims Act. *See Grant County Comm'rs v. Cotton*, 677 N.E.2d 1103, 1105 (Ind.Ct.App. 1997), *trans. denied* ("The Indiana Tort Claims Act did not abolish judicial immunity for actions taken in the exercise of a judicial function."). By its terms, the Tort Claims Act is applicable only to claims in tort, and would not be applicable to the inverse condemnation claims herein. Ind.Code § 34–13–3–1. Thus, Mendenhall's references to Tort Claims Act immunity are inapposite to the issues presented here.

of a valid court order is entitled to judicial immunity. *Id.*

■ When IPD originally padlocked and secured Mendenhall's property in August of 1983, it was in furtherance of a valid court order. The trial court heard evidence on the seizure petition and issued an *ex parte* order to seize the property and its contents until further order of the court. The matter was set for hearing within 72 hours.[6] The trial court was obviously acting within its jurisdiction to enter such an order. Thus, the judicial immunity which would shield the trial judge from liability for issuing this order also shields IPD for executing it. If IPD is shielded by the cloak of judicial immunity from liability for its actions, it follows that the City could not be liable for IPD's protected actions.

When IPD padlocked and secured Mendenhall's property for the second time in August of 1987, it was again in furtherance of this same order. After the original order was issued in 1983, the Court of Appeals decided that the statute upon which it was based was unconstitutional and Mendenhall's property was released to him. The Court of Appeals decision, however, was subsequently vacated and superseded by a decision of the Indiana Supreme Court holding that the statute was not unconstitutional. Believing that property was again subject to the trial court proceedings, Goldsmith ordered IPD to re-seize the property pursuant to the original seizure order when it was learned that Mendenhall had relet his property to another adult bookstore. Mendenhall may take issue with Goldsmith's actions in this regard; however, he did not do so in the trial court in which the proceedings were pending at the time the action was taken, and it certainly is not IPD's responsibility to question the continued validity of an otherwise facially valid order from the trial court. IPD acted in furtherance of a court

order and is thus entitled to judicial immunity for its actions. The City cannot be held liable for protected actions by IPD, and the trial court did not err in so finding.

### C. Form of Action

Finally, the trial court found that "no taking has occurred and [Mendenhall's] inverse condemnation claim is an improper form of action given the undisputed facts." R. 34. Mendenhall contends that the trial court erred in finding that, as a matter of law, no taking has occurred. He contends that by first seizing his building and not allowing him access to it on two different occasions, and then by requiring that he sign a covenant that his building would not be put to an "adult use" in the future before releasing the building to him, the City/County has deprived him of the "highest and best use" of his property. Brief of Appellants at 27.

■ There are two stages to an action for inverse condemnation: 1) the landowner must show that he has an interest in land which has been taken for a public use without having been appropriated under eminent domain laws; and 2) if the court finds that a taking has occurred, then the court appoints appraisers and damages are assessed. *Jenkins v. Board of County Comm'rs,* 698 N.E.2d 1268, 1270 (Ind.Ct.App.1998), *trans. denied.* A taking by inverse condemnation includes "any substantial interference with private property which destroys or impairs one's free use, enjoyment, or interest in the property." *Town Council of New Harmony v. Parker,* 707 N.E.2d 1002, 1008 (Ind.Ct. App.1999). Ordinarily, the question of whether a particular interference is substantial is a question of fact for the factfinder. *Id.* An action for inverse condemnation is premature until such time as the landowner can establish that his property

6. For various procedural reasons, the hearing was never held. However, this is not at issue herein.

has been deprived of all economically beneficial or productive use. *Galbraith v. Planning Dept. of the City of Anderson*, 627 N.E.2d 850, 854 (Ind.Ct.App.1994).

▆▆ We agree that the inverse condemnation action against the City and the County was not the appropriate form of action for redress of Mendenhall's complaints for three reasons. First, any claim that property has been "taken" due to a civil forfeiture action should have been made against the State. It has already been established that Goldsmith acted on behalf of the State in his prosecution and resolution of the civil forfeiture action against Mendenhall's property. Moreover, the provisions of the CRRA provide that, upon a showing that the property has been used in violation of RICO, the court shall "order the property forfeited to the state...." Ind.Code § 34-24-2-2(c)(1). Thus, any liability for an improper taking due to a civil forfeiture action rests with the State.

▆▆ Second, to the extent Mendenhall's "taking" claim is based on either of the two times his property was padlocked pursuant to the seizure order, the appropriate forum for him to have sought redress was in the trial court proceeding in which the seizure order was entered. Mendenhall makes several claims regarding the seizure order, chief among them that there was no basis for the order as to his property to begin with and that it expired long before the second seizure occurred. However, Mendenhall did not challenge the seizure order in the court in which the litigation was pending before filing an entirely separate action to challenge the order. By failing to raise the issue to the trial court in which the forfeiture action was proceeding, Mendenhall passed up his opportunity to argue the validity of the order and the subsequent seizure of his property.

▆▆ Third and finally, to the extent Mendenhall's "taking" claim is based upon the covenant that he not put his property to any adult use in the future, the claim is waived due to his agreement to the covenant. Mendenhall claims that he had to sign the covenant in order to have his property returned to him. We do not believe this to be the case. If Mendenhall had pursued his theory of an unlawful taking in the trial court and if there truly was no basis for the seizure of his property, then his property would have been released to him without restrictions at the conclusion of the trial court proceedings. He signed the covenant in order to have his property released to him sooner rather than later. He cannot now be heard to claim that anyone unlawfully "took" what he willingly gave. Moreover, Mendenhall has not shown that the covenant deprived his property of "all economically beneficial or productive use." *See Galbraith*, 627 N.E.2d at 854. Mendenhall has failed to show that a "taking" of his property for public use without compensation to him has occurred.

### III. Denial of Mendenhall's Motion for Summary Judgment

Mendenhall also contends that the trial court erred in denying his motion for summary judgment because the undisputed facts establish as a matter of law that his property was taken for a public purpose by the City/County without recompense and that he is entitled to compensation for the value of his property. The undisputed facts, however, establish that neither the City nor the County were responsible for any "taking" that may have occurred, and therefore, Mendenhall is not entitled to judgment as a matter of law on his complaint against them for inverse condemnation.

### Conclusion

The trial court properly entered summary judgment for the City and the County on finding that, as a matter of law, neither the City nor the County was liable for Mendenhall's alleged damages for inverse condemnation of his property. Further, the trial court properly denied Men-

denhall's motion for summary judgment. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

MATTINGLY, J., and SHARPNACK, J., concur.